**Ronald Gene LAY, Jr., Plaintiff,**

v.

**Douglas PORKER, Defendant.**

No. CV 02 01680CJSSS.

United States District Court,
C.D. California.

April 8, 2004.

Ronald Gene Lay, Jr., Pro se.

Rene Lucaric, Deputy Attorney General, Office of the California Attorney General, Los Angeles, CA, for Defendant.

## ORDER ADOPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

CARNEY, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has reviewed Plaintiff's First Amended Complaint, Defendant's Motion for Summary Judgment, all the records and files herein, and the Report and Recommendation of the United States Magistrate Judge. The Court has conducted a *de nove* review of those portions of the Report and Recommendation to which Objections have been directed. The Objections do not cause the Court to reject or modify the Report and Recommendation. Accordingly, the Court accepts and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that the Motion for Summary Judgment filed by Defendant is GRANTED. IT IS FURTHER ORDERED that Judgment be entered dismissing this action on the merits.

The Clerk of the Court shall serve copies of this Order, the Magistrate Judge's Report and Recommendation, and the Judgment on Plaintiff and counsel for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This Report and Recommendation is submitted to the Honorable Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

### PROCEEDINGS

On February 27, 2002, Plaintiff, a California state prisoner proceeding *pro se,* lodged a Civil Rights Complaint pursuant to 42 U.S.C. § 1983. The Complaint was filed on March 7, 2002, after the Court granted Plaintiff's request to proceed *in forma cauperis.* Pursuant to 28 U.S.C. § 1915A(a), the Court performed an initial screening of the Complaint. The Court concluded that the allegations of the Complaint were insufficient to state a claim for relief and dismissed, the Complaint with leave to amend on April 3, 2002.

Plaintiff timely filed a First Amended Complaint (the "FAC"). By Orders issued on May 6, 2002, the Court directed service of process by the United States Marshal on Defendant Douglas Porker (the "Defendant"), the only party named in the First Amended Complaint. Defendant filed an Answer on August 5, 2002.[1]

Defendant submitted a Motion for Summary Judgment on September 12, 2003. The Court subsequently advised Plaintiff of the requirements for an Opposition to a Motion for Summary Judgment and provided his with a copy of Federal Rule of Civil Procedure 56.[2] Plaintiff filed an Op-position to the Motion and Defendant submitted a Reply. For the reasons stated below, it is recommended that the Motion be GRANTED.

### FACTUAL BACKGROUND

On December 4, 2000, Plaintiff was received as an inmate at California Men's Colony ("CMC"), having been transferred from Atascadero State Hospital as a result of committing battery on hospital staff. (Defendant's Statement of Uncontroverted Facts and Conclusions of Law ("Def.Facts"), ¶ 14). CMC staff placed him in Administrative Segregation on the basis that he posed a threat to the safety of others. (Def.Facts, ¶ 14). CMC's Administrative Segregation Unit ("ASU") contained "Management Cells" that provided the highest degree of security for inmates who had disrupted the normal ASU program or who continued to be assaultive toward staff or other inmates. (Def.Facts, ¶ 21). Plaintiff was assigned to Management Cell 201. (Def.Facts, ¶ 22).

On the morning of January 2, 2001, Defendant, a correctional sergeant at CMC. attempted to retrieve a breakfast tray and plastic spoon from Plaintiff. (Def.Facts, ¶ 22). Plaintiff did not comply, telling Defendant that he had "flushed it all." (Def.Facts, ¶ 22). Approximately two hours later, CMC staff advised Plaintiff that they were going to move him to another cell so that they could search for the tray and spoon. (Def.Facts, ¶ 25). After speaking with a CMC psychiatrist, Plaintiff agreed to change cells. (Def.Facts, ¶ 25).

Using the "cuffing port" of Plaintiff's cell, Defendant handcuffed Plaintiff in

---

1. By Order dated August 1, 2002, this case was transferred from United States Magistrate Judge Paul L. Abrams to the undersigned United States Magistrate Judge.

2. A district court bears the responsibility of assuring that a *pro se* prisoner litigant re-ceives fair notice of summary judgment requirements. *Wyatt v. Terhune,* 315 F.3d 1108, 1114 (9th Cir.2003) (citing *Rand v. Rowland,* 154 F.3d 952, 960 (9th Cir.1998) (en banc), *cert. denied,* 527 U.S. 1035, 119 S.Ct. 2392, 144 L.Ed.2d 793 (1999)).

preparation for the move. (Def. Facts, ¶ 26; Declaration of Ronald Lay ("Lay Decl."), ¶ 1). Defendant then attempted to unlock Plaintiff's cell door, but was unable to do so because Plaintiff had jammed the lock with pieces of the plastic spoon. (Def. Facts.¶ 26). While Defendant summoned a locksmith, Plaintiff inserted pieces of the utensil into the keyholes of his handcuffs. (Def.Facts, ¶ 27). After the locksmith opened the lock, Plaintiff was placed in leg restraints. (Def.Facts, ¶ 28). Plaintiff's handcuffs had to be cut off, and be was re-handcuffed. (Def.Facts.¶ 28). Defendant, along with two other correctional officers, then escorted Plaintiff to Management Cell 113. (Def. Facts, ¶¶ 28, 29; Lay Decl., ¶ 2). At the time of Plaintiff's transfer, pieces of the spoon remained unaccounted for. (Def.Facts, ¶ 30).

It is routine procedure for CMC officers to conduct an unclothed visual inspection of inmates who are transferred to another ASU Management Cell. (Def. Facts, ¶¶ 31, 33; Plaintiff's Statement of Genuine Issues ("Pl.Facts"), ¶ 4). During such a search of a male inmate by a male officer, all areas of the body are inspected for contraband, including the area between the buttocks and scrotum. (Def.Facts, ¶ 34). At the new cell, Defendant ordered Plaintiff to lay down and proceeded to cut off Defendant's t-shirt and boxes shorts in order to conduct a search of this area. (Def. Facts, ¶ 32; Lay Decl., ¶¶ 3, 4). Officer A. Jordan, a female correctional officer, assisted by holding Plaintiff's feet. (Def. Facts, ¶ 32; Pl. Facts, ¶ 9). Plaintiff legs were too close together to permit inspection of the desired area, and Defendant placed his hands on the upper portion and spread them apart. (Def.Facts, ¶¶ 35, 37). The search lasted about five seconds. (Def.Facts, ¶ 36).

Plaintiff began resisting and was restrained by Defendant, Officer Jordan, and a third officer. (Def.Facts, ¶ 38). The officers removed Plaintiff's handcuffs and left the cell. (Def.Facts, ¶ 39). They returned ten minutes later with a medical technician, though Plaintiff refused to be examined. (Def.Facts, ¶ 40). The medical technician's report noted "no visible injuries." (Def.Facts, ¶ 40).

Plaintiff alleges that Defendant subjected him to an "needlessly intrusive" unclothed and unsanitary body cavity search in the presence of a female correctional officer, who allegedly began laughing. (FAC at 8–9).[3] He contends that Defendant did not give him the opportunity to submit to a less intrusive search. (FAC at 9; Lay Decl., ¶ 12). "Out of fear and humiliation," he states, he struggled with Defendant, and as a result, "received criminal charges and a rule violation report." (FAC at 9; Def. Facts, ¶¶ 41, 42). Plaintiff indicates that he complained of Defendant's conduct to prison authorities and exhausted all of his administrative remedies before initiating the instant action. (FAC at 2, 9–10; Lay Decl., ¶ 15). He maintains that Defendant has a history of committing violent acts upon inmates. (FAC at 10; Pl. Facts, ¶¶ 1, 2).

Plaintiff asserts that Defendant's search violated his rights under the First and Fourth Amendments.[4] (FAC at 5, 8, 15).

---

3. Plaintiff appended several pages to the FAC. Page numbers refer to the actual page, rather than the number appearing on each page.

4. While Plaintiff cites the First Amendment, even if the First Amended Complaint is construed broadly, there are no facts that actually implicate the First Amendment. Even under the more generous pleading standards for pro se plaintiffs, Plaintiff has failed to provide a minimum factual basis needed to provide notice of a First Amendment claim. See Brazil v. U.S. Dep't of Navy, 66 F.3d 193, 199 (9th Cir.1995).

He sues Defendant in Defendant's individual capacity only and seeks one hundred thousand dollars in punitive damages. (FAC at 3, 6, 8, 11).

## DISCUSSION

In his Motion for Summary Judgment, Defendant first argues that Plaintiff did not have a Fourth Amendment right to avoid the unclothed search that is at issue here. He next contends that there was no violation of the Eighth Amendment.[5] Defendant finally urges that he is entitled to qualified immunity. The Court addresses these arguments below.

### A. Summary Judgment Standards

Summary judgment under Federal Rule of Civil Procedure 56(c) hinges on whether or not the evidence, viewed in the light most favorable to the nonmoving party, shows that there are genuine issues of material fact.[6] *Adams v. Synthes Spine Co., LP,* 298 F.3d 1114, 1116–17 (9th Cir. 2002) (citations omitted). The sowing party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has net its initial burden, Federal Rule of Civil Procedure 56(a) requires the nonmoving party to go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548; *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(e) provides chat if the nonmoving party does not respond in such fashion, summary judgment, if appropriate, shall be entered against the nonmoving party.

When a summary judgment notion raises the defense of qualified immunity, "the first inquiry must be whether a constitutional right would have been violated on the facts alleged." *Saucier v. Katz,* 533 U.S. 194, 200, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *see also Haugen v. Brosseau,* 351 F.3d 372, 380 (9th Cir.2003) (citing *Saucier*). If a violation can be made out on a favorable view of plaintiff's submissions, the next sequential step is to examine whether the right was clearly established such that a reasonable official would understand that his conduct was unlawful in the situation he confronted. *Saucier,* 533 U.S. at 201–02, 121 S.Ct. 2151; *see also Haugen,* 351 F.3d at 380–82 (citing *Saucier*).

To determine that the law was clearly established, the court need not look to a case with identical or even materially similar facts. *Serrano v. Francis,* 345 F.3d 1071, 1077 (9th Cir.2003) (citing *Hope v. Pelzer,* 536 U.S. 730, 739–41, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Flores v. Morgan Hill Unified Sch. Dist.,* 324 F.3d 1130, 1136–37 (9th Cir.2003)). Rather, the "'standard is one of fair warning; where the contours of the right have been defined with sufficient specificity that a state official had fair warning that [his] conduct deprived a victim of his rights. [he] is not entitled to qualified immunity.'" *Id.* (citing *Haugen v. Brosseau,* 339 F.3d 857, 873 (9th Cir.2003); *Pelzer,* 536 U.S. at 740 n. 10, 122 S.Ct. 2508). If there is a genuine issue of material fact that prevents a determination of qualified immunity at sum-

---

5. Defendant's argument based on the absence of an Eighth Amendment violation has little relevance, as Plaintiff has not asserted any cause of action based on the Eighth Amendment in the First Amended Complaint.

6. Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

mary judgment, the case must proceed to trial. *Id.* (citing *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1408–10 (9th Cir.1988)).

### B. *Plaintiff Has Alleged Facts Showing A Constitutional Violation*

■ In *Hudson v. Palmer*, 468 U.S. 517, 526, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Supreme Court held that "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." The Ninth Circuit has nevertheless recognized that prisoners do retain limited rights to bodily privacy under the Fourth Amendment. *Michenfelder v. Sumner*, 860 F.2d 328, 333–34 (9th Cir.1988) ("We recognize that incarcerated prisoners retain a limited right to bodily privacy."); *see also Thompson v. Souza*, 111 F.3d 694, 699 (9th Cir. 1997) ("Notwithstanding the language in *Hudson*, our circuit has held that the Fourth Amendment right of people to be secure against unreasonable searches and seizures extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context.") (internal quotations omitted) (citing *Michenfelder*); *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993) (en banc) ("The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches, and its protections are not extinguished upon incarceration.") (citing *Michenfelder*).

In view of these authorities, and contrary to Defendant's representations, it is clear that Plaintiff's allegations implicate the Fourth Amendment. If, as alleged, Defendant subjected Plaintiff to an unreasonable unclothed search in the presence of a female guard, then Defendant's conduct violated the Fourth Amendment, Accordingly, the first prong of the *Saucier* test is satisfied.

### C. *The Constitutional Violation Was Not Clearly Established*

■ The second *Saucier* prong raises the "purely legal" issue of whether the law at the time of the alleged constitutional violation was clearly established. *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 993 (9th Cir.1999). The Court concludes that it was not, as discussed below.

The Ninth Circuit's decision in *Grummett v. Rushen*, 779 F.2d 491 (9th Cir. 1985), provides a useful starting point. There, prison inmates challenged a prison policy of allowing female guards to view male inmates while dressing, showering, being strip searched, or using toilet facilities. *Grummett*, 779 F.2d at 492. The court rejected this challenge, reasoning that "[t]o restrict the female guards from positions which involve occasional viewing of the inmates would necessitate a tremendous rearrangement of work schedules, and possibly produce a risk to both internal security needs and equal employment opportunities for the female guards." *Id.* at 495. The court further concluded that pat-down, clothed searches (including the groin area) performed by female guards on male inmates were not so offensive as to be unreasonable under the Fourth Amendment. *Id.* at 492, 496.

In *Michenfelder*, a male inmate alleged that routine visual body cavity searches conducted within view of female prison guards violated the Fourth and Eighth Amendments. *Michenfelder*, 860 F.2d at 330. Applying the "rational relationship" test of *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the court held that any impingement on the inmate's right to privacy was reasonably related to legitimate penological interests.[7] *Id.* at

---

7. The Ninth Circuit reiterated the holding of *Michenfelder* in *May v. Baldwin*, 109 F.3d

334; *cf. Bell v. Wolfish,* 441 U.S. 520, 558–60, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (body cavity searches conducted on pretrial detainees after contact visits as a means of preventing possession of weapons and contraband did not violate Fourth Amendment). The court specifically acknowledged as legitimate both the interest in providing equal employment opportunities to female guards and the security interest in deploying staff effectively. *Michenfelder,* 860 F.2d at 334. It also cited the limited nature of the guards' involvement, as they were only able to observe the searches in question from a control booth monitor. *Id.*

*Sepulveda v. Ramirez,* 967 F.2d 1413 (9th Cir.1992), *cert. denied,* 510 U.S. 931, 114 S.Ct. 342, 126 L.Ed.2d 307 (1993), involved a female parolee who alleged a violation of her constitutional right to bodily privacy after a male parole officer observed her while producing a urine sample for drug testing. *Sepulveda,* 967 F.2d at 1414, 1415. Rejecting qualified immunity for the parole officer, the court described the parolee's experience as "far more degrading ... than the situation faced by the inmates in *Grummett.*" *Id.* at 1416.

The Ninth Circuit again addressed the subject of cross-gender prison searches in *Jordan,* in which female inmates asserted a constitutional challenge to a prison policy allowing male guards to conduct pat-down, clothed searches on them. *Jordan,* 986 F.2d at 1523–24. While the court did not reach the inmates' Fourth Amendment claims, it stated the following:

> Whether such rights exist-whether the inmates possess privacy interests that could be infringed by the cross-gender aspect of otherwise constitutional searches-is a difficult and novel question,

and one that cannot be dismissed lightly. But we cannot assure from the fact that the searches cause immense anguish that they therefore violate protected Fourth Amendment interests. Far from it, our prior case law suggests that prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited. *See Grummett v. Rushen,* 779 F.2d 491, 495–96 (9th Cir. 1985) (pat-down searches of male inmates that included groin area by female guards do not violate Fourth Amendment), *Michenfelder,* 860 F.2d at 334 (occasional visual strip searches of male inmates by female guards do not violate Fourth Amendment).

*Id.* at 1524. The Court added that "[a]lthough the inmates here may have protected privacy interests in freedom from cross-gender clothed body searches, such interests have not yet been judicially recognized." *Id.* at 1524–25.

Reviewing the above precedent in *Somers v. Thurman,* 109 F.3d 614 (9th Cir.), *cert. denied,* 522 U.S. 852, 118 S.Ct. 143, 139 L.Ed.2d 90 (1997), the Ninth Circuit noted that *Jordan* had taken the court in a "different direction" from the suggestion by *Grummett, Michenfelder,* and *Sepulveda* that "up close, frequent, and intentional viewing by guards of the opposite sex could violate a prisoner's privacy rights." *Somers,* 109 F.3d at 621. At issue in *Somers* were a male prisoner's allegations that female guards subjected him to visual body cavity searches on a regular basis, monitored him during showers, and made jokes among themselves while carrying out these duties. *Id.* at 616–17. The prisoner sued for Fourth and Eighth Amendment violations. *Id.* at 615–16.

557, 565 (9th Cir.) ("[Plaintiff] also states that the prison officials conducted a visual body cavity search in violation of the Fourth Amendment. However, this court has found the type of search he describes as reasonable."), *cert. denied,* 522 U.S. 921, 118 S.Ct. 312, 139 L.Ed.2d 241 (1997).

The district court denied the female guards' notion for judgment on the pleadings based on qualified immunity, and the Ninth Circuit reversed. *Id.* at 616. "In light of our en banc statements in *Jordan*," the court declared, "we cannot say that by the time the alleged conduct took place in October 1993, eight months after we decided *Jordan*, male inmates had *clearly established* Fourth Amendment privacy interests prohibiting the cross-gender searches in the instant case." *Id.* at 620 (emphasis in original). The court further observed that "it is highly questionable even today whether prison inmates have a Fourth Amendment right to be free from routine unclothed searches by officials of the opposite sex, or from viewing of their unclothed bodies by officials of the opposite sex." *Id.* at 622. As the plaintiff's lawsuit in *Somers* sought only monetary damages, the court did not decide whether such a right actually exists. *Id.* Other circuits have held that prisoners have no general right not to be seen unclothed by guards of the opposite sex. *See, e.g., Johnson v. Phelan,* 69 F.3d 144, 146 (7th Cir.1995) (opposite-sex monitoring of naked prisoners permissible under Fourth Amendment), *cert. denied,* 519 U.S. 1006, 117 S.Ct. 506, 136 L.Ed.2d 397 (1996); *Timm v. Gunter,* 917 F.2d 1093, 1101–02 (8th Cir.1990) (opposite-sex pat searches and monitoring of naked prisoners did not violate inmates' privacy rights), *cert. denied,* 501 U.S. 1209, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991).

Subsequent to *Somers,* the Ninth Circuit held that no clearly established Fourth Amendment right was violated when a prisoner was strip searched for contraband drugs outside his cell and in view of other prisoners, "assuming *arguendo* he possesse[d] any Fourth Amendment rights at all." *Thompson v. Souza,* 111 F.3d 694, 700–01 n. 4 (9th Cir.1997). Like the body cavity searches at issue in *Michenfelder*, the strip search was reasonably related to legitimate penological interests. *Id.* at 701.

For purposes of qualified immunity, the Supreme Court has explained the following:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

The volume of applicable precedent examined by the Court does *not* make apparent the unlawfulness of the conduct of which Plaintiff complains. Plaintiff's central allegation is that Defendant subjected him to an intrusive body cavity search in the presence of a female officer that he found to be degrading and humiliating. The contours of an inmate's right to be free from routine [8] searches of the type Plaintiff describes, and to be free from bodily exposure to guards of the opposite sex, simply do not dictate that Defendant had "fair warning" that his conduct deprived Plaintiff of his constitutional rights.

---

**8.** Among the undisputed facts in this case is the standard procedure for CMC officers to conduct an unclothed visual inspection of inmates (like Plaintiff) who are transferred from one administrative segregation cell to another, to be certain that they do not have contraband. (Def. Facts, ¶¶ 31, 33; Pl. Facts, ¶ 1).

Plaintiff, in fact, states that he did not resist when Defendant instructed him to lay down and proceeded to cut off his t-shirt and boxer shorts because this was "the routine practices within the ASU–Central." (Pl.Facts, Ex. 4, ¶ 19).

### D. *Conclusion*

As the unlawfulness of Defendant's conduct was not "clearly established" within the framework of *Saucier.* Defendant is entitled to qualified immunity for the claims asserted against him. Accordingly, the Motion for Summary Judgment should be granted. Though Plaintiff contends that Defendant's search violated applicable poison regulations, departure from these regulations, even if true, does not automatically strip Defendant of qualified immunity. *Somers,* 109 F.3d at 621 (citing *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Sandin v. Conner,* 515 U.S. 472, 481–82, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).

### RECOMMENDATION

Consistent with the foregoing. IT IS RECOMMENDED that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation, (2) GRANTING Defendant's Motion for Summary Judgment, and (3) directing that Judgment be entered in favor of Defendant on all claims.

March 4, 2004.