Anastausia SEPULVEDA, Plaintiff–Appellee,

v.

R. RAMIREZ, Cresa B. Appleby, Parole Agent; Jim Ludwig, Defendants–Appellants.

No. 90–16178.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 10, 1991.

Decided June 26, 1992.

Jennifer A. Moss, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellants.

Donald P. Driscoll, San Francisco, Cal., for plaintiff-appellee.

Before: SKOPIL, PREGERSON and O'SCANNLAIN, Circuit Judges.

PREGERSON, Circuit Judge:

Plaintiff Anastausia Sepulveda, a parolee, filed suit for damages under 42 U.S.C. § 1983 (1981) against California State Parole Officers James Ludwig and Cresa Appleby. Sepulveda alleged a violation of her constitutional right to bodily privacy. The officers moved for summary judgment. They claim that they were entitled to qualified immunity. The district court denied their motion and the officers appeal.[1]

We have jurisdiction over this interlocutory appeal. *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).[2] We conclude that a genuine issue of material fact exists whether Officer Ludwig's conduct violated Sepulveda's clearly established constitutional right to bodily privacy and affirm the district court's decision denying summary judgment.

## BACKGROUND

Anastausia Sepulveda was paroled from state prison on July 21, 1988. Officer Ap-

---

1. The California Attorney General moved for summary judgment in the district court on behalf of both Officers Ludwig and Appleby. While this appeal is filed on behalf of both officers, the briefs do not discuss any conduct by Officer Appleby.

2. "[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell*, 472 U.S. at 530, 105 S.Ct. at 2817.

pleby, a woman, was assigned as Sepulveda's parole officer. Sepulveda agreed to submit to drug testing as a condition of her parole. In fall 1988, Officer Appleby asked Sepulveda to report to the parole office. When Sepulveda arrived, Appleby was in a meeting and unavailable. Sepulveda met instead with Officer Ludwig, a male parole officer.

Officer Ludwig ordered Sepulveda to produce a urine sample for drug testing. Sepulveda entered the restroom and began to provide the sample. Officer Ludwig then entered the restroom. Without Sepulveda's consent, he walked into the stall where Sepulveda was partially unclothed and seated on the toilet. Sepulveda objected strongly to his presence in the stall and asked him to leave. According to Sepulveda, Officer Ludwig laughed and told her that she "did not have anything he had not seen before." Ludwig remained in the stall while Sepulveda finished urinating, cleaned herself, and dressed.[3]

Officer Ludwig contends that his conduct was authorized by California Department of Corrections regulations.[4] Sepulveda argues that the manual prohibits such behavior.

## DISCUSSION

■ The question presented by this appeal is whether Officer Ludwig was entitled to summary judgment based on qualified immunity. We review de novo the district court's decision to deny a claim of qualified immunity. *White v. Pierce County*, 797 F.2d 812, 814 (9th Cir.1986). In reviewing a denial of summary judgment based on qualified immunity, "we must accept as true the facts stated in the affidavits." *DiMartini v. Ferrin*, 889 F.2d 922, 926 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991).

■ The doctrine of qualified immunity protects government officials from civil liability for damages caused by their actions. This immunity applies to conduct by officials who, at the time of their actions, could reasonably believe that their behavior was lawful in light of clearly established law. *Anderson v. Creighton*, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ We hold that Officer Ludwig was not entitled to summary judgment based on qualified immunity. At the time of Officer Ludwig's alleged actions, Ninth Circuit law clearly established Sepulveda's right to bodily privacy. Moreover, no reasonable parole officer would have believed that the action allegedly taken by Officer Ludwig was lawful.

### 1. Clearly Established Right

The right to bodily privacy was established in this circuit in 1963. *York v. Story*, 324 F.2d 450 (9th Cir.1963), *cert. denied,* 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964).[5] We extended this right to prison inmates in 1985. *Grummett v. Rushen*, 779 F.2d 491 (9th Cir.1985).

> Urine samples shall be taken under direct observation. If this is not possible, steps shall be taken to reduce the possibility of manipulation, including checking the restroom for other individuals or contraband before allowing parolee to enter, prohibiting parolee from taking anything other than specimen container into restroom, and noting general temperature and color of sample immediately after securing it.

---

**3.** Officer Ludwig denies that he entered the stall, but instead asserts that he remained in the restroom entrance while Sepulveda provided the sample. On appeal from a denial of a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party. *DiMartini v. Ferrin*, 889 F.2d 922, 925–926 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 2796, 115 L.Ed.2d 970 (1991). Thus, for purposes of this appeal, we assume that Ludwig entered the stall and watched Sepulveda provide the sample.

**4.** Chapter 800, § 81020 of the California Department of Corrections Manual provides, in relevant part:

**5.** "The desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *York,* 324 F.2d at 455.

In *Grummett,* prison inmates brought a class action against San Quentin officials. The inmates alleged that prison policy allowing female officers to view male prisoners while disrobing, showering and using toilet facilities violated the prisoners' right to privacy. We extended the *York* standards to the inmate's claims but upheld the prison regulations. Our holding was based in part on the fact that the officers' view of the prisoners was generally obscured and from a distance. Accordingly, we concluded that the inmates had not demonstrated that "restricted observations by members of the opposite sex [were] so degrading as to require intervention by this court." *Grummett,* 779 F.2d at 495 (citation omitted).

The facts as set forth by Sepulveda are markedly different. Officer Ludwig's view of Sepulveda from within the toilet stall was neither obscured nor distant. This experience was far more degrading to Sepulveda than the situation faced by the inmates in *Grummett.*

The prison cases are instructive because the constitutional rights of parolees are even more extensive than those of inmates. As we held in *Latta v. Fitzharris,* 521 F.2d 246 (9th Cir.), *cert. denied,* 423 U.S. 897, 96 S.Ct. 200, 46 L.Ed.2d 130 (1975), a parolee has "at least as much protection as he had within prison walls." *Id.* at 248.

 As a parolee, Sepulveda has, at a minimum, the same right to bodily privacy as a prison inmate. Moreover, this right was clearly established by 1988. *Grummett,* 779 F.2d 491; *See Michenfelder v. Sumner,* 860 F.2d 328, 334 (9th Cir.1988); *Valdez v. Farman,* 766 F.Supp. 1529, 1535 (E.D.Cal.1991).

## 2. Reasonable Belief

Officer Ludwig contends that his conduct was reasonable. He argues that California

Department of Corrections policy authorized his conduct in this case. In particular, he points to department policy requiring observation of parolees providing urine samples. We disagree with Officer Ludwig's characterization of the department's policy. California Department of Corrections regulations state that "[a]ll unclothed searches will be performed by ... correctional officers *of the same sex* as the inmate and in a place providing privacy." California Department of Corrections Manual § 3830 (emphasis added). This provision reasonably applies to prohibit Officer Ludwig's conduct in this case. First, compulsory urinalysis is a search.[6] Second, a parolee visiting the parole office has at least as much right to privacy as a parole violator who is being searched before incarceration. Third, the department manual provides for alternative drug testing procedures in situations where "[direct observation] is not possible."[7] We agree with Sepulveda that these regulations apply when the agent and parolee are of different sexes. Officer Ludwig's actions, as alleged, violate California Department of Corrections rules governing searches and drug testing procedures.

 We hold that no reasonable officer could believe that the actions allegedly taken by Officer Ludwig were lawful. Officer Ludwig's behavior as alleged, runs contrary to common sense, decency, and California Department of Corrections regulations.

## CONCLUSION

The right to bodily privacy is fundamental. This right applies to a parolee submitting to drug testing, and was clearly established at the time Officer Ludwig ordered Sepulveda to submit a urine sample. Further, a reasonable parole officer could not have believed that the actions allegedly taken by Officer Ludwig in this case were lawful.

---

**6.** *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

**7.** For text of regulation, see California Department of Corrections Manual, *supra* note 4.

We find that the facts, examined in the light most favorable to Sepulveda, demonstrate that Officer Ludwig is not entitled to summary judgment based on qualified immunity. Accordingly, we AFFIRM the decision of the district court denying summary judgment and REMAND for further proceedings. AFFIRMED and REMANDED.

O'SCANNLAIN, Circuit Judge, dissenting:

Any constitutional right that Sepulveda may have had not to be observed by a parole officer of the opposite sex while producing a urine sample was not, in my view, "clearly established" at the time of the incident, as required by *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Hence, I respectfully dissent from the denial of qualified immunity for appellants.

The only question we face on this appeal is whether the district court erred in denying appellants' summary judgment motion on the issue of qualified immunity. This case is not about whether appellants exercised "common sense." Nor is it about whether they violated state regulations. *See Davis v. Scherer*, 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some [state] statutory or administrative provision."). Most important, the merits of Sepulveda's constitutional claim are not before us; our review is narrow. We must merely determine whether appellants' conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738.

Critical to determining whether a constitutional right was "clearly established" is properly framing such right. As Justice Scalia has observed, "[t]he operation of [the *Harlow*] standard ... depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987); *see also Michael H. v. Gerald D.*, 491 U.S. 110, 109 S.Ct. 2333, 2344 n. 6, 105 L.Ed.2d 91 (1989) (Scalia, J., joined by Rehnquist, C.J.) (discussing the significance of the level of generality with which a right is defined in concluding whether an asserted right is so rooted in history and tradition as to be protected under the "liberty" term of the Due Process Clause). For instance, at a highly generalized level, one might characterize the right allegedly violated here as the "right to bodily privacy." At this level of generality, a case could be made that the right is "clearly established." *See York v. Story*, 324 F.2d 450, 455–56 (9th Cir.1963), *cert. denied*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964) (complaining witness who is forced by the police to be photographed unclothed has stated a constitutional claim).

But virtually any alleged right could be recast as a part of a very broad right that is more generally recognized. If courts were simply to accept these characterizations, however, "*Harlow* would be transformed from a guarantee of immunity into a rule of pleading." *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3039. Thus, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent." *Id.* at 640, 107 S.Ct. at 3039. Thus, in *Anderson*, while it was manifest that the right to be free from warrantless searches of one's home absent exigent circumstances was "clearly established," the lower court erred in not looking at the particular circumstances of the challenged search to determine whether it was clearly established *under those circumstances* that exigency did not exist, and that accordingly the search was unconstitutional. *Id.* at 640–41, 107 S.Ct. at 3039.

Assuming that a generalized right to bodily privacy is "clearly established" under decisional law, whether such right existed under the particular circumstances presented here is most uncertain under our case law. Prior to this case, there appear to be no decisions in our circuit recognizing parolees' privacy rights in these circumstances, let alone any cases attempting to strike a balance between the privacy interests of parolees and the interests of the state in accurate drug testing of its parolees.

We are left to attempt to draw analogies from prisoner cases, and these decisions hardly make a compelling case that a fundamental right of prisoners to bodily privacy has been "clearly established." Indeed, both times this circuit has addressed the question, it has *permitted* prison officials to view unclothed inmates of the opposite sex. We have engaged in balancing of inmates' interest in not being viewed unclothed with the administrative needs of the prison. Thus, we have permitted female guards to view unclothed male prisoners, where "the positions to which they are assigned require infrequent and casual observation, or observation at a distance." *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir.1985). We also have held that the Constitution does not bar female guards from occasionally being present at strip searches of men or from routinely serving on shower duty in a men's prison. *Michenfelder v. Sumner*, 860 F.2d 328, 330, 334 (9th Cir.1988). In sum, this circuit has never held that the Constitution is violated by the mere fact of a prison official viewing the unclothed body of an inmate of the opposite sex, and has not even addressed the question of bodily privacy rights parolees may have in connection with drug testing.

Looking at the particularized circumstances of this case, in my view appellants did not violate a "clearly established" constitutional right. Whatever due process right a prisoner or parolee may have against his or her unclothed body being viewed by an official of the opposite sex, the contours of such right are not sufficiently clear that a reasonable officer here would understand that what he was doing violated that right.

The merits of Sepulveda's case are not before us and I express no views on whether she has stated a constitutional claim. Any right she may have in not having a parole officer observe her while she produced a urine sample, however, in my view is not so "clearly established" as to abrogate appellants' qualified immunity.

Hence, I respectfully dissent.