**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHARLES EDWARD BYRD, *Plaintiff-Appellant*, <br><br> v. <br><br> MARICOPA COUNTY BOARD OF SUPERVISORS, John/Jane Does 1–100; JOSEPH M. ARPAIO, named as: Maricopa County Sheriff Joe Arpaio; MARICOPA COUNTY SHERIFF'S OFFICE, named as Maricopa County Sheriff's Department, *Defendants-Appellees.* | No. 15-16282 <br><br> D.C. No. 2:14-cv-02656-NVW-DKD <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted November 14, 2016
San Francisco, California

Filed January 6, 2017

Before:  Stephen Reinhardt and John B. Owens, Circuit Judges, and Salvador Mendoza, Jr.,[*] District Judge.

Opinion by Judge Owens

## SUMMARY[**]

### Prisoner Civil Rights

The panel reversed the district court's sua sponte dismissal under 28 U.S.C. § 1915A, and remanded in an action brought under 42 U.S.C. § 1983 challenging defendants Maricopa County Sheriff's Department, Maricopa County Board of Supervisors, and Sheriff Joe Arpaio's alleged policy of allowing female guards to observe daily, from four to five feet away, male pretrial detainees showering and using the bathroom.

The panel held that even if plaintiff was a convicted prisoner rather than a pretrial detainee, his allegations survived a section 1915A dismissal.  The panel held that assuming that the female guards could view male pretrial detainees while showering and using the toilet frequently and up close, the scope and manner of the intrusions were far broader than those this court previously has approved.

[*] The Honorable Salvador Mendoza, Jr., United States District Judge for the Eastern District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel stated that it may be that the prison's up close and personal policy of female guards observing male pretrial detainees was necessary to ensure security and provide equal work opportunities in the prison. But such considerations and their legal effect were just conjecture at this point. And conjecture was not enough to dismiss a complaint under section 1915A. The panel held that defendants should respond to plaintiff's lawsuit.

## COUNSEL

Helen Andrews and Cory Batza (argued), Certified Law Students; Jeremy B. Rosen, Supervising Attorney, and Mark A. Kressel, Horvitz & Levy LLP, Burbank, California; for Plaintiffs-Appellants.

Joseph J. Branco (argued), Anne C. Longo, and Thomas P. Liddy, Deputy County Attorneys; William G. Montgomery, County Attorney; Civil Services Division, Maricopa County Attorney's Office, Phoenix, Arizona; for Defendants-Appellees.

## OPINION

OWENS, Circuit Judge:

Charles Edward Byrd, an Arizona state prisoner and former pretrial detainee, appeals from the district court's *sua sponte* dismissal under 28 U.S.C. § 1915A of his 42 U.S.C. § 1983 action challenging defendants Maricopa County Sheriff's Department, Maricopa County Board of

Supervisors, and Sheriff Joe Arpaio's alleged policy of allowing female guards to observe daily, from four to five feet away, male pretrial detainees showering and using the bathroom.  The district court dismissed Byrd's pro se complaint without requiring a response because it thought that Ninth Circuit precedent foreclosed his claims.  This was incorrect.  Because the district court should have required defendants to file an answer to Byrd's complaint, rather than immediately dismissing it under section 1915A, we reverse and remand for further proceedings.

## I.  Background

This is not the first time Byrd has challenged defendants' policies for pretrial detainees.  *See Byrd v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1147 (9th Cir. 2011) (en banc) (agreeing with Byrd and holding that a cross-gender strip search in the absence of an emergency violates a pretrial detainee's Fourth Amendment rights).  This time, he alleges in his handwritten pro se complaint (technically his second amended complaint) that defendants' policy of having female guards regularly view his bathroom and shower use from four to five feet away violates his Fourth and Fourteenth Amendment rights, and causes him severe emotional harm due to his own history of abuse.  He also alleges that this policy conflicts with defendants' policy that prohibits female guards from strip searching male prisoners in non-emergency situations.

The district court *sua sponte* dismissed the complaint because "[t]he policy to which Plaintiff objects is precisely the type of cross-gender supervision that has long been held constitutional in the Ninth Circuit."  Because the district court dismissed the complaint under section 1915A, we do not have defendants' side of the story, such as any

counterbalancing security or personnel management issues to consider.

## II.  Standard of Review

We review de novo a district court's *sua sponte* section 1915A dismissal of a complaint, construing the pro se complaint liberally and taking all the allegations of material fact as true and in the light most favorable to Byrd. *Ramirez v. Galaza*, 334 F.3d 850, 853–54 (9th Cir. 2003).  We review the denial of leave to amend for an abuse of discretion.  *Id.* at 854.

## III.     Discussion

### A.  Fourth Amendment Claim

Byrd alleges that defendants' policy violated his Fourth Amendment right to be free from unreasonable searches.  To determine if he is correct, we consider "(1) the scope of the particular intrusion, (2) the manner in which it is conducted, (3) the justification for initiating it, and (4) the place in which it is conducted." *Byrd*, 629 F.3d at 1141 (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (internal quotations omitted)).  Taking Byrd's allegations as true, Byrd has sufficiently alleged facts to survive section 1915A dismissal.

First, while the observation occurred in prison, where there are limited privacy rights, *see Hudson v. Palmer*, 468 U.S. 517, 527 (1984), Byrd's status as a pretrial detainee suggests that he may have had greater rights than convicted prisoners. *See Stone v. City & Cty. of S.F.*, 968 F.2d 850, 857 n.10 (9th Cir. 1992) (noting that "pretrial detainees . . . possess greater constitutional rights than prisoners").  That alone is enough to distinguish Byrd's allegations from

precedent concerning convicted prisoners, which the district court thought foreclosed Byrd's claims.

Second, even if Byrd were a convicted prisoner, Byrd's allegations survive section 1915A dismissal. Assuming that the female guards could view male pretrial detainees while showering and using the toilet frequently and up close, the scope and manner of the intrusions were far broader than those our court previously has approved. In *Grummett v. Rushen*, we upheld cross-gender surveillance of showers specifically because "such actual viewing of the inmates is infrequent and irregular." 779 F.2d 491, 495 (9th Cir. 1985). Similarly, in *Michenfelder v. Sumner*, we held that female guards observing male prisoner body cavity searches from a control booth that provided limited view of the searches, and female guards sometimes conducting male prisoner shower duty, were reasonable because the female guards were "not routinely present for strip searches" and observation from video monitors "would provide at most an indistinct, limited view." 860 F.2d 328, 334 (9th Cir. 1988). The current case is, at this early stage, distinguishable from *Grummett* and *Michenfelder* because the observation was allegedly not infrequent, irregular, or from a distance, but frequent and just a few feet away. The district court erred in reading our case law to preclude Byrd's claim.

Defendants argue that this policy is justified to ensure the institutional security of the prison and equal employment opportunities for female guards. But at this early stage, after a *sua sponte* dismissal of the complaint, we have no evidence supporting defendants' justifications for regular cross-gender observation in showers and toilets. Further, Byrd alleges that the challenged monitoring violates the prison's policy prohibiting guards from conducting cross-gender strip searches of inmates and defining a strip search as "the

visual scan of an inmate's body after all clothing has been removed." If this is true, it undermines the prison's justifications for allowing female guards to view male pretrial detainees in showers and toilets frequently and up close.

Defendants' reliance on out-of-circuit authority actually illustrates why the dismissal here was premature. For example, in *Timm v. Gunter*, the Eighth Circuit upheld female guard monitoring of male inmates showering. 917 F.2d 1093 (8th Cir. 1990). In that case, the observation of prisoners (not pretrial detainees) was neither constant nor intrusive, but rather "through small, steam- and water-covered windows positioned in such a way as to hinder the guard's attempt to see every showering inmate's body in full." *Id.* at 1101. And in *Oliver v. Scott*, the Fifth Circuit upheld a cross-sex surveillance policy at the *summary judgment* stage after reviewing evidence that the inmates in question had "convictions for more severe and violent crimes," something the prisoner did not contest. 276 F.3d 736, 746 (5th Cir. 2002).

Here, we have no evidence that the pretrial detainees were especially violent. We do not have anything in the record to suggest why this intrusive policy was necessary for convicted prisoners, much less pretrial detainees. For all we know at this point, this policy could be in place not for security reasons, but merely to humiliate pretrial detainees. Accordingly, Byrd's Fourth Amendment claim is "sufficient to warrant ordering [defendants] to file an answer." *Wilhelm v. Rotman,* 680 F.3d 1113, 1116 (9th Cir. 2012).

### B. Fourteenth Amendment Right to Bodily Privacy Claim

Byrd also alleges that defendants' policy violated his Fourteenth Amendment Due Process right to bodily privacy. "[P]risoners retain a limited right to bodily privacy." *Michenfelder*, 860 F.2d at 333. As a pretrial detainee, Byrd had at least the same right to bodily privacy as a prisoner. *See Stone*, 968 F.2d at 857 n.10. As described below, our analysis largely mirrors the above Fourth Amendment discussion.

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine if a prison regulation can survive a constitutional challenge, we consider whether (1) there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "there are alternative means of exercising the right"[1]; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources"; and (4) there is an "absence of ready alternatives[.]" *Id.* at 89–90. (internal quotations and citations omitted).

Byrd alleges that the challenged observation violates the prison's own policy of prohibiting cross-gender visual strip searches of inmates. This suggests that there may be no

---

[1] The second factor – alternative means of exercising the right at issue – is not relevant here because Byrd is seeking to protect his right to privacy, which necessarily entails addressing the prison policy that allegedly violates his rights. *See Michenfelder*, 860 F.2d at 331 n.1 (stating that the second *Turner* factor is much more meaningful in the First Amendment context, than in the Fourth or Eighth, "where the right is to be free from a particular wrong").

"valid, rational connection" between the observation and a legitimate prison interest.  While Byrd does not allege any facts about the impact that changing the prison's policy of allowing female guards to observe male inmates while showering and using the bathroom would have on the rest of the prison, he cannot know these facts at this early stage of his case, nor is that his concern.  Without a response from the defendants, we cannot adequately assess the *Turner* factors.

We also have held that similar conduct involving a male parole officer observing a female parolee while she used the toilet, when his view was "neither obscured nor distant," violated her clearly established right to bodily privacy. *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992). *Sepulveda* strongly suggests that dismissal at this stage was premature.  Accordingly, the allegations of Byrd's bodily privacy claim, taken as true, warrant an answer. *Wilhelm,* 680 F.3d at 1116.

## C.  Fourteenth Amendment Cruel and Unusual Punishment Claim

Finally, Byrd alleges that defendants' policy violated his Fourteenth Amendment Due Process right to be free from cruel and unusual punishment.[2]  Prison officials may be liable for cruel and unusual punishment if they "acted with deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (internal quotations omitted).

---

[2] The Fourteenth Amendment, and not the Eighth Amendment, governs cruel and unusual punishment claims of pretrial detainees. *Bell*, 441 U.S. at 535 n.16.

Byrd alleges that he filed five grievances to alert prison officials that he felt uncomfortable being observed by female guards, particularly because of his past sexual abuse, to no avail.  These facts sufficiently allege for section 1915A purposes that defendants were deliberately indifferent to Byrd's substantial risk of serious harm.

Byrd also must show that a prison condition is not "reasonably related to a legitimate governmental objective" for it to be unlawful.  *Bell*, 441 U.S. at 539.  Defendants repeat that the policy of allowing female guards to observe male prisoners while showering and performing bodily functions serves the prison's interests in institutional security and equal employment opportunities.  But as Byrd points out, the prison's strip search policy potentially bans this type of observation.  And in any case, we have no evidence to support defendants' security and equal opportunity goals because of the section 1915A dismissal.  Therefore, Byrd's allegations for his cruel and unusual punishment claim, taken as true, are "sufficient to meet the low threshold for proceeding past the screening stage." *Wilhelm*, 680 F.3d at 1123.

## IV.    Conclusion

It may be that the prison's up close and personal policy of female guards observing male pretrial detainees is necessary to ensure security and provide equal work opportunities in the prison.  *See, e.g.*, *Michenfelder*, 860 F.2d at 334; *Grummett*, 779 F.2d at 496.  But such considerations and their legal effect are just conjecture at this point.  And conjecture is not enough to dismiss a complaint under

section 1915A.    Defendants should respond to Byrd's lawsuit.**[3]**

Finally, we remand with instructions that the district court appoint counsel to represent Byrd. *See Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) ("[A] court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)."). Exceptional circumstances exist in this case as evidenced by Byrd's limited ability to articulate his claims pro se, the complexity of the legal issues involved, and the possible merit of his claims.

**REVERSED and REMANDED**.

---

**[3]** Byrd argues that he should be allowed to add an Equal Protection claim because female detainees are allegedly not subjected to cross-gender observation in showers and toilets, while male detainees are. On remand, the district court should consider whether to grant Byrd leave to amend.