**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SAMANTHA VAZQUEZ,
*Plaintiff-Appellant*,

v.

COUNTY OF KERN; HEATHE
APPLETON; GEORGE ANDERSON,
*Defendants-Appellees.*

Nos. 18-15060
18-15671

D.C. No.
1:16-cv-01469-JLT

OPINION

Appeal from the United States District Court
for the Eastern District of California
Jennifer L. Thurston, Magistrate Judge, Presiding

Argued and Submitted July 16, 2019
San Francisco, California

Filed January 31, 2020

Before: Richard A. Paez and Johnnie B. Rawlinson,
Circuit Judges, and Paul C. Huck,* District Judge.

Opinion by Judge Paez

---

* The Honorable Paul C. Huck, United States District Judge for the
U.S. District Court for Southern Florida, sitting by designation.

# SUMMARY[**]

### Prisoner Civil Rights

The panel reversed the district court's summary judgment in favor of defendants in an action brought pursuant to 42 U.S.C. § 1983 alleging that a Juvenile Corrections Officer violated plaintiff's constitutional rights when he made sexual comments to her, groomed her for sexual abuse, and looked at her inappropriately while she was showering.

The panel held that, viewing the facts in the light most favorable to plaintiff and drawing all reasonable inferences in her favor, she had presented sufficient facts to establish a violation of her right to bodily privacy, right to bodily integrity, and right to be free from punishment as guaranteed by the Fourteenth Amendment. Thus, the panel held that the Corrections Officer violated plaintiff's right to privacy under the Fourteenth Amendment when he allegedly watched her shower multiple times. Additionally, a jury could find that the Officer's alleged conduct, which included touching plaintiff's face and shoulders without her consent, talking about her appearance in her shower gown, and telling her about a sexual dream, violated plaintiff's Fourteenth Amendment right to bodily integrity. Finally, the panel held that plaintiff asserted facts from which a jury could find that the Officer violated plaintiff's right to be free from punishment because she alleged that the Officer's conduct caused her harm outside of the inherent discomforts of

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

confinement and did not serve a legitimate governmental objective. The panel held that the Officer was not entitled to qualified immunity.

The panel held that a jury could find that the Officer's supervisor knew or reasonably should have known of the violations and failed to act to prevent them. Thus, viewing the evidence in the light most favorable to plaintiff and making all justifiable inferences in her favor, the panel held that the district court erred when it concluded there was no evidence supporting a causal link between the supervisor's conduct and the Officer's alleged violation of plaintiff's constitutional rights.

In addition to reversing the summary judgment in favor of the individual defendants, the panel also vacated the district court's judgment for Kern County and the district court's order awarding costs.

## COUNSEL

Thomas C. Seabaugh (argued), The Law Office of Thomas C. Seabaugh, Los Angeles, California; Paul Hoffman, Schonbrun Desimone Seplow Harris & Hoffman LLP, Hermosa Beach, California; David K. Cohn, Chain Cohn Stiles, Bakersfield, California; for Plaintiff-Appellant.

Kathleen Sarah Rivera (argued), Deputy County Counsel; Mark L. Nations, County Counsel; Office of the Kern County Counsel, Bakersfield, California; for Defendants-Appellees County of Kern and Heathe Appleton.

James D. Weakley (argued) and Ashley N. Torres, Weakley and Arendt PC, Fresno, California; for Defendant-Appellee George Anderson.

Ian M. Kysel (argued) and Amanda Goad, ACLU Foundation of Southern California, Santa Ana, California, for Amicus Curiae ACLU of Southern California.

---

**OPINION**

PAEZ, Circuit Judge:

In January 2015, Samantha Vazquez was arrested on an outstanding warrant and taken to Kern County Juvenile Hall. Vazquez argues that while in custody at the hall, a Juvenile Corrections Officer, George Anderson, made sexual comments to her, groomed her for sexual abuse, and looked at her inappropriately while she was showering.

Vazquez filed this action against Anderson, his supervisor, Heathe Appleton, and the County of Kern ("Kern County"). She brought claims under 42 U.S.C. § 1983, alleging that Anderson's conduct violated her constitutional rights. She also alleged claims against Kern County and Appleton for municipal and supervisory liability. The district court ultimately granted Anderson's and Appleton's motions for summary judgment.[1] We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

---

[1] After issuing the orders granting the motions for summary judgment filed by Anderson and Appleton, the district court issued an order to show cause whether Vazquez could maintain this action against Kern County considering the summary judgment rulings. Vazquez

## BACKGROUND

Vazquez entered Kern County Juvenile Hall in January 2015. She was housed in Unit 300A, an all-female unit, where Anderson worked. Juvenile hall staff frequently placed wards on work "details," including laundry, kitchen, and clean-up.

Vazquez contends that Anderson purposefully selected her to work "details" with him. During her deposition, Vazquez testified that Anderson said inappropriate things to her such as calling her "babe" and telling her she had a "big butt" in the juvenile hall pants. Vazquez also testified that Anderson "grabbed [her] face," "touched [her] shoulders," and talked with her about her shower gown.

In her testimony, Vazquez described one specific incident where she was working a "detail" with Anderson and he told her about a dream he had about her that was "rated R." She testified that he told her to shut the door and then told her the details of the dream including that, in the dream, she "grabbed him by his t-shirt," "gave him a kiss" and "after that [they] ended up going to a room and, like, having fun and stuff." After that, she testified that he told her "to get close to him, like, to the point where he had opened his knees and [she] was right in the middle of him, and [he] told [her] that he wanted his dream to come true." Vazquez testified that she moved away from him after and felt "really really awkward."

---

responded and while preserving her right to appeal, agreed that the action could not be maintained against Kern County in light of the district court's rulings. The district court then dismissed the action against Kern County and entered judgment in favor of all defendants.

Vazquez also alleged that Anderson would tell her which shower stalls to use and that he looked at her inappropriately while she was showering on three or four occasions. She testified that she caught him staring at her in the shower when he was standing at the staff counter and that she tried to cover herself up.[2] She also testified that Anderson told her he had seen her in the shower, and that she should leave her boyfriend and "find someone better like him."

Vazquez first reported her allegations to substance abuse specialist Francisco Maldonado. Maldonado testified that when Vazquez made the allegations he felt she was being truthful. Maldonado reported the allegations and Kern County opened an investigation into Vazquez's complaints that same day.

The investigation was led by Shaun Romans and lasted approximately eight months. Romans interviewed fifty-five people and reviewed three interviews conducted by the Bakersfield Police Department. When questioned about the allegations against Anderson, Romans testified that in his investigative opinion, he "leaned toward them being true, toward the belief that it was more likely than not that they were true." The allegations were also sustained by the disciplinary review board at the probation department. Kern County then began the process of terminating Anderson's employment.

Anderson testified that he selected Vazquez to work with him once or twice and that "maybe once" they had been alone in a room together for twenty minutes. He testified

---

[2] The record reflects that a person sitting at the staff counter in Unit 300A could look into at least one of the shower stalls through a gap in the shower curtains.

that he selected Vazquez because she was a gang member who supplied him with useful gang intelligence and because she was a good worker. He contended that Vazquez told him about her boyfriend, who was a gang member, and told him that she had hidden some of her boyfriend's guns at her house. Anderson also testified that he remained at the staff counter while Vazquez showered on one or two occasions, but that he was never told that he could not sit at the staff counter while female wards showered.

Several staff members testified that they observed Anderson alone with female wards, including Vazquez. Another staff member testified that she observed Anderson sitting at the staff counter while female wards showered.

Shay Molennor, Director of Kern County Juvenile Hall, testified that at the time of Vazquez's allegations, Kern County had policies in place at the juvenile hall to prevent or deter sexual abuse of wards. She further testified that certain standards in place at the time implemented the Prison Rape Elimination Act (PREA). *See* 34 U.S.C. §§ 30301–30309 (2017); 28 C.F.R. §§ 115.11–115.16.

Moreover, Molennor testified that Section 1425 of the Juvenile Hall Basic Staff Rules, which were in effect at the time of the allegations, stated: "Staff members are not permitted alone in the rooms with minors of the opposite gender except during an emergency. For security purposes, staff should avoid being alone with any minor in their room." She testified that the Juvenile Hall Administrative Manual required supervision of the showers to be provided by staff of the same gender as the youth and that "except in exigent circumstances or incidental to a routine youth safety check the youth will be permitted to shower, perform bodily functions, and change clothing without nonmedical staff of

the opposite gender viewing their breasts, buttocks, or genitalia."

## STANDARD OR REVIEW

We review de novo a district court's "grant of summary judgment." *Branch Banking & Tr. Co. v. D.M.S.I., LLC*, 871 F.3d 751, 759 (9th Cir. 2017). "We must determine, viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in its favor, whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002).

We review de novo a district court's decision on qualified immunity. *Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017). We review for abuse of discretion a district court's award of costs. *Draper v. Rosario*, 836 F.3d 1072, 1087 (9th Cir. 2016).

## DISCUSSION

On appeal, Vazquez challenges the district court's orders granting Anderson's motion for summary judgment, Appleton's motion for summary judgment on Vazquez's supervisory liability claim, and the district court order awarding costs.

## I. Anderson's Motion for Summary Judgment

The district court granted Anderson's motion for summary judgment of Vazquez's claims to the extent they were based on sexual abuse or a violation of Vazquez's right to privacy. First, Anderson argued that even if Vazquez's sexual abuse allegations were true, his alleged conduct did

not violate her constitutional rights. The district court agreed, concluding that it could not find "harm of constitutional proportions" regarding the sexual abuse claim.

Second, regarding the privacy claim, the district court acknowledged there was a "dispute regarding whether—and to what extent—Anderson watched [Vazquez] in the shower." Taking the facts in the light most favorable to Vazquez, the district court concluded that Anderson's alleged conduct was not sufficiently frequent to violate Vazquez's right to privacy. Finally, the district court proceeded to conclude that even assuming Anderson's conduct rose to the level of a constitutional violation, he was entitled to qualified immunity.

We disagree. We hold that, viewing the facts in the light most favorable to Vazquez and drawing all reasonable inferences in her favor, she has presented sufficient facts to establish a violation of her right to bodily privacy, right to bodily integrity, and right to be free from punishment as guaranteed by the Fourteenth Amendment. We also hold that Anderson is not entitled to qualified immunity.

## A.  Fourteenth Amendment Right to Bodily Privacy

"The right to bodily privacy [under the Fourteenth Amendment] was established in this circuit in 1963." *Sepulveda v. Ramirez*, 967 F.2d 1413, 1415–16 (9th Cir. 1992) (citing *York v. Story*, 324 F.2d 450 (9th Cir. 1963)).[3]

---

[3] In *York*, the female plaintiff alleged that after she went to the police department to report an assault, a male officer took and later distributed photographs of her in nude positions that did not depict her injuries and were not made for any lawful or legitimate purpose. 234 F.2d at 452. We "relied upon the [F]ourteenth Amendment as the source of the woman's protection, reasoning that the security of one's privacy against

We extended "this right to prison inmates in 1985," *id.* (citation omitted), and we have held that a pretrial detainee has "at least the same right to bodily privacy as a prisoner," *Byrd v. Maricopa Cty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017).

In *Grummett*, we considered a class action asserting that a "policy and practice of allowing female correctional officers to view male inmates in states of partial or total nudity while dressing, showering, being stripped searched, or using toilet facilities violated [the inmates'] rights of privacy guaranteed by the United States Constitution." 779 F.2d at 492. In our analysis, we noted that female guards were "not assigned to positions requiring unrestricted and frequent surveillance"; female guards routinely walked past cells, but did not stop for prolonged inspection; female guards did not accompany male inmates to the showers; and "females [were] assigned to the more distant gunrail position, overlooking showers, where . . . the surveillance [was] obscured." *Id.* at 494–95. From these circumstances, we concluded that "the inmates have not demonstrated that these restricted observations by members of the opposite sex are so degrading as to require intervention by this court." *Id.* at 494.

---

arbitrary intrusion by the police is basic to a free society and therefore 'implicit in the concept of ordered liberty' under the due process clause." *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir. 1985) (quoting *York*, 234 F.2d at 455). "We held that the plaintiff had stated a privacy claim under the [F]ourteenth [A]mendment because we could not conceive of a more basic subject of privacy than the naked body. *Id.* (citation omitted). We noted that "[t]he desire to shield one's unclothed figure from [the] view of strangers, and particularly strangers of the opposite sex, is impelled by elementary self-respect and personal dignity." *Id.* (internal quotation marks and citation omitted).

Similarly, in *Sepulveda*, we considered the claim of a female parolee who alleged that a male officer entered the restroom while she was providing a urine sample for drug tests. 967 F.2d at 1415. The female parolee objected to his presence and asked him to leave, but the male officer laughed at her and remained in the restroom. *Id.* We affirmed the district court's order that the officer was not entitled to summary judgment on the basis of qualified immunity, concluding that the plaintiff's "experience was far more degrading . . . than the situation faced by the inmates in *Grummett*." *Id.* at 1415–16. We pointed out that, unlike in *Grummett*, the defendant's view of the parolee was "neither obscured nor distant." *Id.*

Here, Vazquez contends that Anderson violated her right to privacy under the Fourteenth Amendment when he allegedly watched her shower multiple times and on one occasion looked into her room when her privacy sign was up.[4] First, Anderson concedes that "[t]he right to not be viewed naked by members of the opposite sex is protected under the Constitution," but contends that "there is a compelling state interest for the safety and security of the juvenile detention facility for the guards to be present (in a separate room and behind a computer desk during the wards' shower time.)"[5]

Anderson's argument that there is a compelling state interest for his alleged actions is not persuasive as there is

---

[4] Indeed, Vazquez testified that Anderson told her he had seen her in the shower.

[5] "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Byrd*, 845 F.3d at 923.

evidence in the record that his actions, at least with respect to the shower allegations, were against institution policy. *See Byrd*, 845 F.3d at 924 (noting that the fact that the challenged observation violated the prison's policy "suggests that there may be no 'valid rational connection' between the observation and a legitimate prison interest"). For example, another corrections officer testified that she was trained that male staff should not be in the unit while females are showering and that if she had observed Anderson at the staff counter while female wards were showering she would have reported it. A substance abuse counselor also testified that if he had observed a male staff member sitting at the staff counter while female wards were showering he would have reported it. And the director of the juvenile hall testified that the Juvenile Hall Administrative Manual required supervision of the showers to be provided by staff of the same gender as the youth, and that "except in exigent circumstances or incidental to a routine youth safety check the youth will be permitted to shower . . . without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia."

Second, Anderson argues that his alleged conduct, even if true, did not violate Vazquez's right to privacy because his view into the showers was infrequent, from a distance, and did not involve an inappropriate amount of contact. Yet viewing the evidence in the light most favorable to Vazquez, even if Anderson observed her from a distance, the question of whether his observation was "infrequent and casual" remains in dispute. Moreover, there is evidence that Anderson directed Vazquez to use a certain shower stall so he could obtain the best view.

Given the evidence that there was no rational connection between Anderson's conduct and a legitimate prison interest

and the evidence that Anderson's view was not necessarily "obscured and from a distance," we disagree with the district court that Anderson's alleged viewings were not sufficiently frequent to violate Vazquez's right to privacy under the Fourteenth Amendment. *See Byrd*, 845 F.3d at 922, 924 (concluding allegations that female prison guards regularly viewed a male pretrial detainee's bathroom and shower use violated his Fourteenth Amendment right to bodily privacy could not be dismissed without an answer). Viewing the evidence in the light most favorable to Vazquez, we hold that a reasonable jury could conclude that Anderson violated Vazquez's Fourteenth Amendment right to bodily privacy.

## B. Fourteenth Amendment Right To Bodily Integrity

"Most cases that involve unwanted sexual contact or harassment by public officials have been analyzed under the substantive due process right to be free from violations of bodily integrity under the Fourteenth Amendment." *Fontana v. Haskin*, 262 F.3d 871, 881–82 n.6. (9th Cir. 2001).[6] "Under the Fourteenth Amendment's substantive due process prong, we use the 'shocks the conscience' test." *Id.* at 882 n.7 (citing *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). "The threshold question is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.* (quoting *Sacramento*, 523 U.S. at 848 n. 8).

---

[6] Cases involving unwanted sexual contact or harassment by public officials during an arrest or custodial situation are evaluated under the Fourth Amendment. *Fontana*, 262 F.3d at 881–82 n.6. As Vazquez did not raise any Fourth Amendment arguments in her appellate briefing, we only address the Fourteenth Amendment.

Vazquez asserts that Anderson selected her for isolated work details so that he could groom her for sex. She alleges that Anderson referred to her as "babe," told her she had a "big butt," touched her face and shoulders without her consent, talked to her about her appearance in her shower gown, told her he had seen her in the shower, and told her that she should leave her boyfriend and "find someone better like him." Moreover, she testified that during a work detail, Anderson told her to close the door and proceeded to tell her about a sexual dream he had about her. Vazquez testified that Anderson then told her "to get close to him . . . to the point where he had opened his knees and [she] was right in the middle of him, and he told [her] that he wanted his dream to come true."

As he did before the district court, Anderson continues to argue that even assuming Vazquez's version of events is true, his alleged conduct was too insignificant to constitute a violation of Vazquez's Fourteenth Amendment right to bodily integrity. Thus, we must consider whether Anderson's alleged conduct, if true, would violate Vazquez's Fourteenth Amendment right to bodily integrity.

In *Fontana*, we considered whether similar conduct was sufficient to allege a section 1983 claim.[7] 262 F.3d at 875–76. There, the plaintiff was arrested for drunk driving, handcuffed, and placed in the back of a police vehicle as she was driven to jail. *Id.* at 875. The plaintiff alleged a police officer sexually harassed her during the drive to the station.

---

[7] We analyzed *Fontana* under the Fourth Amendment because it involved an arrest but noted that if it had not involved an arrest, we would have analyzed the case under the Fourteenth Amendment. *Fontana*, 262 F.3d at 881–82 n.6. We ultimately said that even if we were to apply the Fourteenth Amendment analysis, using the "shocks the conscience" test, we would have reached the same result. *Id.* at 882 n.7.

*Id.* She alleged that an officer sat in the back seat next to her where he told her she had nice legs, put his arm around her, massaged her shoulders, told her he could be her "older man," and made other sexual comments. *Id.* The defendant officer argued that his alleged behavior did not violate any of the plaintiff's constitutional rights as a matter of law. *Id.* at 878. We disagreed, concluding that the allegations, if true, were "an abuse of power" and violations of the plaintiff's bodily integrity. *Id.* at 881. Significantly, in our analysis, we also took note of the context of the allegations. *See id.* at 880–81 (noting the plaintiff alleged she was "helpless, handcuffed, and frightened and, thus, in a vulnerable position when [the defendant] began to prey upon her" because "[s]he had just been in a disorienting, high speed car accident at two o'clock in the morning").

Here, Vazquez's assertions are sufficiently similar to those in *Fontana* for us to conclude that a reasonable jury could find that Anderson's alleged conduct violated Vazquez's Fourteenth Amendment right to bodily integrity. Moreover, the context of Vazquez's allegations demonstrate that she was at least as vulnerable as the *Fontana* plaintiff. At the time of the alleged events, Vazquez was a female ward at juvenile hall, whereas Anderson was 45 years old, was larger than Vazquez, wore a uniform, and had the power to discipline her if she refused to follow his instructions. Thus, a jury could find that Anderson's alleged conduct "was egregious and outrageous and shocks the conscience as a matter of law." *Fontana*, 262 F.3d at 882 n.7.

## C. Fourteenth Amendment Right to be Free From Punishment

"The status of the detainees determines the appropriate standard for evaluating conditions of confinement." *Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987). "Due

process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979).

"For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (citing *Bell*, 441 U.S. at 538). "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.* at 1030 (citation omitted). Once harm is established, the court considers "whether this harm is imposed 'for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Id.* (quoting *Bell*, 441 U.S. at 538).

Here, we evaluate Vazquez's right to be free from punishment under the Fourteenth Amendment. *See Gary H.*, 831 F.2d at 1432 (concluding that the district court correctly evaluated the conditions of confinement at a facility for adolescent wards of the juvenile court under the Fourteenth Amendment due process clause rather than the Eighth Amendment).[8]   The district court acknowledged that Vazquez's claim stems from the Fourteenth Amendment,

---

[8] In an amicus brief filed in support of Vazquez, the American Civil Liberties Union of Southern California ("the ACLU") argues that we should evaluate Vazquez's claims under an even more protective standard than the Constitution provides to adult pretrial detainees. We do not address this argument because Vazquez can prevail under our existing Fourteenth Amendment standards.

rather than the Eighth Amendment, but erred in its conclusion that it should evaluate the Fourteenth Amendment claim under "the same standards" as an Eighth Amendment claim. Rather, the Fourteenth Amendment is more protective than the Eighth Amendment "because the Fourteenth Amendment prohibits *all* punishment of *pretrial detainees*, while the Eighth Amendment only prevents the imposition of *cruel and unusual* punishment of *convicted prisoners*." *Demery*, 378 F.3d at 1029 (citing *Bell*, 441 U.S. at 535 n.16) (emphasis added).

In *Byrd*, we considered, among other issues, whether allegations that female guards observed a pretrial detainee in the bathroom and shower violated his Fourteenth Amendment right to be free from cruel and unusual punishment. 845 F.3d at 921–22, 924. There, the district court sua sponte dismissed the complaint under 28 U.S.C. § 1915A after concluding that the policy of allowing cross-gender supervision had long been held constitutional in the Ninth Circuit. *Id.* at 922. Because no evidence had yet been presented to support potential goals behind the observation policy and because the prison's strip search policy potentially banned this type of observation, we concluded that the allegations were sufficient to proceed past the screening stage. *Id.* at 924.

Here, Vazquez has asserted facts from which a jury could find that Anderson violated her right to be free from punishment. First, Vazquez alleged that Anderson's conduct caused her harm outside of the inherent discomforts of confinement. Second, Anderson's alleged conduct did not serve a legitimate governmental objective. As discussed above, there is evidence that Anderson's alleged viewing of Vazquez in the shower served no legitimate purpose as such observations were against institution policy. *See Byrd*,

845 F.3d at 924.   Anderson's other alleged conduct—
including selecting Vazquez for work details so they could
be alone together; calling Vazquez "babe"; telling her she
had a "big butt"; touching her face and shoulders;
commenting on her shower gown; telling her that he had
seen her in the shower and that she should leave her
boyfriend to find someone like him; directing her to use
certain showers; telling her about a sexual dream he had
about her and that he wanted the dream to come true; and
directing her  "to get close to him . . . to the point where he
had opened his knees and [she] was right in the middle of
him"—serves no legitimate purpose.  In light of this record
evidence, we hold that a jury could find that Anderson
violated Vazquez's Fourteenth Amendment right to be free
from punishment.

### D.  Qualified Immunity

"Qualified immunity attaches when an official's conduct
does  not  violate  clearly  established  statutory  or
constitutional rights of which a reasonable person would
have known."  *Kisela v. Hughes*, 138 S. Ct. 1148, 1152
(2018) (internal quotation marks and citation omitted).  "A
clearly established right is one that is sufficiently clear that
every reasonable official would have understood that what
he is doing violates that right."  *Mullenix v. Luna*, 136 S. Ct.
305, 308 (2015) (internal quotation marks and citation
omitted).  "[T]he clearly established right must be defined
with specificity."  *City of Escondido, Cal. v. Emmons*, 139 S.
Ct. 500, 503 (2019).   However, "there can be the rare
'obvious case,' where the unlawfulness of the officer's
conduct is sufficiently clear even though existing precedent
does not address similar circumstances."  *D.C. v. Wesby*,
138 S. Ct. 577, 590 (2018).  Thus, "[w]hen a violation is
obvious enough to override the necessity of a specific factual

analogue, . . . it is almost always wrong for an officer in those circumstances to act as he did." *Sharp v. Cty. of Orange*, 871 F.3d 901, 912 (9th Cir. 2017). Training materials and regulations are also relevant, although not dispositive, to determining whether reasonable officers would have been on notice that their conduct was unreasonable. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1062 (9th Cir. 2003); *see also Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002) (considering an Alabama Department of Corrections regulation and a Department of Justice report in its qualified immunity analysis).

### i.   Bodily Privacy

In this circuit, "[i]t is clearly established that the Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy . . . the naked body.'" *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007), *cert. granted, judgment vacated on other grounds*, 556 U.S. 1256 (2009) (quoting *Grummet*, 779 F.2d at 494); *see also Sepulveda*, 967 F.2d at 1416 ("The right to bodily privacy is fundamental. . . . and was clearly established at the time . . . .").

Anderson also likely attended a PREA training.[9] Under the PREA, sexual abuse includes "[v]oyeurism, which is defined as the inappropriate visual surveillance of a detainee for reasons unrelated to official duties." 6 C.F.R. § 115.6. Moreover, Kern County Juvenile Hall's policies require

---

[9] Catherine Gonzalez, a Deputy Probation Officer, testified that she taught Kern County's PREA course and that she believed that Anderson and Appleton completed the PREA training. Gonzalez testified that the PREA course "goes over the policy," but did not explicitly explain what was covered in the training.

supervision of showers to be provided by staff of the same gender, and, absent exigent circumstances or incidental to a routine safety check, require that a ward be allowed to shower and perform bodily functions without nonmedical staff of the opposite gender from viewing them.

Therefore, given that we have clearly recognized a Fourteenth Amendment right to bodily privacy, the Juvenile Hall administrative policies, and the training Anderson likely attended, he is not entitled to qualified immunity for Vazquez's Fourteenth Amendment bodily privacy claim.

### ii. Bodily Integrity and Right to Be Free From Punishment

"Where guards themselves are responsible for the rape and sexual abuse of inmates, qualified immunity offers *no* shield." *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) (emphasis in original). "In the simplest and most absolute of terms the . . . right of prisoners to be free from sexual abuse [is] unquestionably clearly established [in the Ninth Circuit] . . . and no reasonable prison guard could possibly [believe] otherwise." *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

Anderson argues that his alleged conduct—including sexual comments and contact—is not equivalent to the sexual abuse that we have found unconstitutional. Yet, in *Fontana*, we noted that the alleged similar conduct, was "*malum in se*" and that "[n]o reasonable officer could believe that this conduct did not violate [the plaintiff's] constitutional rights." *Fontana*, 262 F.3d at 882 n.8. Moreover, the Kern County Juvenile Hall policy prohibiting staff members from being alone in a room with minors absent an emergency as well as Anderson's likely PREA training provided him with notice that his alleged conduct

was unreasonable. [10]   And, beyond the clearly established case law, training, and juvenile hall policies, it is "obvious" that a juvenile corrections officer should not sexually harass or abuse a juvenile ward as it is always wrong for a juvenile corrections officer to engage in such conduct. *See Sharp*, 871 F.3d at 912 (9th Cir. 2017).  Accordingly, we conclude that Anderson is not entitled to qualified immunity for Vazquez's bodily integrity or punishment claims.

## II.  Appleton's Motion for Summary Judgment

Appleton sought summary adjudication of Vazquez's claim for relief for supervisory liability under § 1983. "Although there is no pure *respondeat superior* liability under § 1983, a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations [of subordinates] and failed to act to prevent them. *Preschooler II v. Clark Cty. Sch. Bd. of Trustees*, 479 F.3d 1175, 1182 (9th Cir. 2007) (internal quotation marks and citation omitted).  "The requisite causal connection may be established when an official sets in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional harms." *Id.* at 1183 (internal quotation marks and citation omitted).

Vazquez identified facts from which a jury could find that Appleton "set[] in motion a series of acts" which he reasonably should have known would cause Anderson to

---

[10] PREA defines "sexual harassment" as "[r]epeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures." 28 C.F.R. § 115.6.

inflict constitutional harm. *Id.* at 1183. First, he observed Anderson alone with female wards on more than one occasion and failed to intervene. Anderson also testified that Appleton gave him permission to be alone in a cell with female wards during work details.

Second, Appleton was aware of a prior incident involving Anderson's supervision of female wards' showers. Approximately six months before Vazquez raised her allegations, a staff member overheard Anderson tell a female ward to get ready to shower when the female staff and other wards were outside at physical education. The staff member was concerned by Anderson's actions, partly because the gap in the shower curtains would allow someone sitting at the staff counter to see into the showers. She took notes about the incident and reported it to Appleton. Appleton did not write Anderson up, but he did bring up the incident with his supervisor.[11] Appleton testified that his supervisor told him to remind Anderson to have a female staff member in the unit while showers were conducted. Appleton testified he did not recall exactly how he spoke to Anderson about the matter but that he would have conveyed to him something "along the lines" of needing "to have a female present during showers."

From this evidence a jury could find that Appleton knew or reasonably should have known of Anderson's violations and failed to act to prevent them. *See Preschooler II*, 479 F.3d at 1182. Thus, viewing the evidence in the light most favorable to Vazquez and making all justifiable inferences in her favor, we hold that the district court erred

---

[11] Appleton was trained that if he observed any red flags of sexual abuse or if he received any reports from other staff members, he had to document and report the observations.

when it concluded there was no evidence supporting a causal link between Appleton's conduct and Anderson's alleged violation of Vazquez's constitutional rights.

## CONCLUSION

The district court erred when it granted Anderson's and Appleton's motions for summary judgment. Because we conclude the district court erred in granting summary judgment, we need not consider Vazquez's argument that the district court erred when it imposed costs. Accordingly, for the reasons described above, we **REVERSE** and **REMAND** for further proceedings consistent with this opinion.**[12]**

---

**[12]** Furthermore, we vacate the district court's order awarding costs. We also vacate the district court's judgment in favor of Kern County and remand for further proceedings consistent with this opinion.