**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| MAUREEN ABSTON, individually, and as Personal Representative of the Estate of Richard Abston; COREY ABSTON; JACY ABSTON; LINDA ABSTON, <br><br>        Plaintiffs - Appellees, <br><br>   v. <br><br> CITY OF MERCED, a municipal corporation; RUSS THOMAS, in his capacity as Sheriff for the the City of Merced, <br><br>        Defendants, <br><br>   and <br><br> J. HART; B. DALIA; N. ARELLANO, individually and in their capacities as police officers for the City of Merced, <br><br>        Defendants - Appellants. | No. 11-16500 <br><br> DC No. 1:09 cv-0511 OWW <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Eastern District of California
Oliver W. Wanger, Senior District Judge, Presiding

---

       \*    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Argued and Submitted December 6, 2012
San Francisco, California

Before:     D.W. NELSON, TASHIMA, and MURGUIA, Circuit Judges.

Defendants-Appellants, City of Merced police officers Jason Hart, Bernard Dalia, and Noemi Arellano, are alleged to have used constitutionally excessive force during the arrest of Richard Abston.  Abston died at the conclusion of the incident described below.  Abston's family members brought this action under 42 U.S.C. § 1983.  The district court denied defendants' motion for summary judgment on qualified immunity grounds, and defendants have taken this interlocutory appeal.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

Around 8:00 a.m., on February 7, 2008, in Merced, California, Abston was high on methamphetamine and driving the wrong way – south in the northbound lanes – of Highway 99.  He pulled over when ordered to do so by a California Highway Patrol ("CHP") officer, but ignored repeated orders to exit the vehicle.  Following a scuffle with the CHP officer, during which Abston exhibited bizarre

behavior,[1] Abston took off running down the middle of the northbound lanes, where traffic had stopped. He climbed to the top of a tractor-trailer's sleeper cabin and refused orders to descend. Defendants Hart and Arellano then arrived. Abston refused to comply even after the CHP officer emptied a can of pepper spray in his face. The officers climbed onto the tractor-trailer and forced him down. Abston again took off running, this time toward a low, median barrier that separated him from moving traffic in the southbound lanes.

Officer Hart drew his X26 Taser and warned Abston to stop or be tased, but Abston kept running toward the median. Hart then deployed a five-second Taser cycle in dart mode. Abston fell to the ground, attempted to get up, and began crawling despite Hart's warning to stop and put his hands behind his head else be tased again. Hart deployed another five-second cycle and attempted to restrain Abston's hands. Arellano, accompanied by a CHP officer, arrived a few seconds later. Abston was face-down with his hands clasped underneath his chest. He kicked, screamed, and banged his head on the ground as officers attempted to subdue him. Hart again warned Abston to stop resisting or he would be be tased.

---

[1] Abston, who was sweating profusely, yelled something incomprehensible about his son being in a hotel, unable to breathe. Defendants maintain that Abston also exhibited abnormal strength and pain-resistance throughout the encounter.

3

The third tasing, another five-second cycle, was administered less than two minutes after the second. Hart applied a fourth, five-second cycle a few seconds after the third.

By the time Dalia arrived on the scene, Abston's hands were cuffed in front of his body and defendants were struggling to control his legs. Abston kicked Arellano, causing her to stumble backwards. He then kicked Hart in the shoulder with such force as to require surgery. Eventually, officers succeeded in shackling his legs.

A bystander captured the last few minutes of Abston's life on video. On that video, Abston is seen face-down, handcuffed and ankle-shackled, while defendants apply pressure to his back. Defendants contend that their actions were necessary because Abston was actively resisting. They acknowledge that Hart continued applying his body weight to Abston's prone body for 1 minute, 7 seconds. Although the video is often obscured by passing vehicles, it is clear that for almost one minute, Abston was handcuffed, ankle-shackled, prone, and physically restrained by at least four individuals, including Hart. What is not clear is whether Abston continued to resist during this period and, if so, whether his resistance was anything more than minimal, considering that he was handcuffed and ankle-shackled.

4

Less than three minutes after defendants left the scene, a CHP officer noticed that Abston was not breathing. Abston was pronounced dead at 8:47 a.m. Plaintiffs' expert forensic pathologist opined that the cause of death was positional asphyxia.

## II.

We review the district court's denial of qualified immunity de novo. *Blanford v. Sacramento Cnty.*, 406 F.3d 1110, 1114 (9th Cir. 2005). Disputed issues of material fact are viewed in the light most favorable to the non-moving party, here, plaintiffs. *See KRL v. Estate of Moore*, 512 F.3d 1184, 1188-89 (9th Cir. 2008). We employ a two-part analysis to determine whether: (1) defendants violated Abston's constitutional rights; and, if so, (2) the right was "clearly established in light of the specific context of the case" on the day of the arrest. *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (internal quotation marks omitted); *see Saucier v. Katz*, 533 U.S. 194, 200, (2001). We may, in our discretion, "decid[e] which of [*Saucier*'s] two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

## III.

We analyze all claims of excessive force that arise during or before an arrest under the Fourth Amendment's "reasonableness" standard, as guided by *Graham v. Connor*, 490 U.S. 386 (1989). *See Smith v. City of Hemet*, 394 F.3d 689, 700-01 (9th Cir. 2005) (en banc). We conclude that, viewed in the light most favorable to plaintiffs, these facts establish a Fourth Amendment violation.

A reasonable fact-finder could conclude that defendants' use of body compression as a means of restraint was unreasonable and unjustified by any threat of harm or escape when Abston was handcuffed and shackled, in a prone position, and surrounded by numerous officers.[2] *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) (concluding that "the force allegedly employed was severe and, under the circumstances, capable of causing death or serious injury" where defendant officers allegedly "continued to press their weight on [plaintiff's] neck and torso as he lay handcuffed on the ground and begged for air").

IV.

---

[2] Defendants argue that the district court erred in concluding that two factual disputes were genuine and material: whether defendants (1) were aware that Abston, who was shirtless throughout their encounter, had a well-healed chest scar indicating pacemaker installation; and (2) removed Abston from the tractor-trailer by pulling him down or allowing him to drop. In light of our disposition, we need not reach these questions.

It was clearly established that defendants' use of body compression to restrain a prone and bound suspect, who was in no position to offer any meaningful resistance, would violate the rule established by *Drummond* nearly five years earlier, in 2003. *See id.* at 1059 ("The officers – indeed, any reasonable person – should have known that squeezing the breath from a compliant, prone, and handcuffed individual despite his pleas for air involves a degree of force that is greater than reasonable."); *accord id.* at 1062. During the period when Abston was handcuffed, ankle-shackled, and prone, the bystander's video creates a genuine issue of material fact as to whether Abston resisted, and, if so, whether his resistance was anything more than minimal. A reasonable jury could answer either question in the negative, bringing defendants' conduct within *Drummond*. *See Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2083 (2011) ("We do not require a case directly on point, but existing precedent must have placed the . . . question beyond debate.").

In contrast, it was not clearly established at the time of Abston's arrest that use of four, five-second Taser cycles within a span of approximately two minutes against a suspect who appeared unarmed, fell to the ground following the first tasing and thereafter presented no real threat of escape, and was surrounded by three officers, was objectively unreasonable. *See Bryan v. MacPherson*, 630 F.3d

7

805, 833 (9th Cir. 2010). Because the Taser claims fail to survive *Saucier*'s second prong under *Pearson*, 555 U.S. at 236, we need not reach the first prong. Thus, we need not decide whether use of a Taser in the manner and in the circumstances described here would be a Fourth Amendment violation under the test laid out in *Bryan*, 630 F.3d at 823-32.

· • ● • ·

Because plaintiffs' body compression claim survives *Saucier*'s qualified immunity test, the district court did not err in denying defendants' motion for summary judgment as to that claim. The district court erred, however, in denying partial summary judgment to defendants on plaintiffs' Taser claims on the ground of qualified immunity. Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**