FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ANTHONY PEREZ; CECILIA PEREZ; TERRALEE PEREZ, individually and as successor in interest to Joseph Perez; JOSEPH PEREZ, Jr., individually and as successor in interest to Joseph Perez; MICHELLE PEREZ, individually and as successor in interest to Joseph Perez, | No. 22-15546 <br><br> D.C. No. 1:18-cv-00127-AWI-EPG |
| *Plaintiffs-Appellants*, <br><br> v. | |
| CITY OF FRESNO; COUNTY OF FRESNO; JAMES ROSSETTI; SEAN CALVERT; CHRIS MARTINEZ; BRAITHAN STOLTENBERG; ROBERT MCEWEN; KARLSON MANASAN; JIMMY ROBNETT; AMERICAN AMBULANCE; MORGAN ANDERSON, | OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted September 11, 2023
San Francisco, California

Filed April 15, 2024

Before:  Danny J. Boggs,* Sidney R. Thomas, and Danielle
J. Forrest, Circuit Judges.

Opinion by Judge Forrest;
Partial Concurrence and Partial Dissent by Judge S.R.
Thomas

## SUMMARY**

### Civil Rights/Deadly Force/Qualified Immunity

The panel affirmed the district court's summary judgment for the City and County of Fresno, individual law-enforcement officers, and a paramedic in an action brought by the family of Joseph Perez, who asphyxiated and died after the officers, at the direction of the paramedic, used their body weight to restrain Perez while he was prone in order to strap him to a backboard for hospital transport.

The panel held that the law-enforcement officers were entitled to qualified immunity. At the time of Perez's death in 2017, the law did not clearly establish, nor was it

---

* The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

otherwise obvious, that the officers' actions—pressing on a backboard on top of a prone individual being restrained for medical transport, at the direction of a paramedic working to provide medical care—would be unconstitutional.

The panel next held that the paramedic involved was entitled to qualified immunity because the law did not clearly establish at the time that a paramedic acting in a medical capacity to restrain a person in order to secure the person for medical transport could be held liable for a constitutional violation under either the Fourth or Fourteenth Amendment.

Finally, the panel held that the district court properly dismissed plaintiffs' *Monell* claims because plaintiffs presented insufficient evidence that the City and the County were deliberately indifferent to their duty to properly train their law-enforcement officers.

Concurring in part and dissenting in part, Judge S.R. Thomas concurred in the majority's analysis of the paramedic liability and failure-to-train claims. However, he disagreed with the conclusion that the law governing the conduct of the individual law-enforcement defendants was not clearly established in 2017. Extensive federal case law, departmental guidance, and common sense gave the officers fair warning that applying continuous force to the back of a prone person who claims he cannot breathe is constitutionally excessive.

## COUNSEL

Thomas C. Seabaugh (argued), The Law Office of Thomas C. Seabaugh, Los Angeles, California; John C. Taylor and Neil K. Gehlawat, Taylor & Ring LLP, Manhattan Beach, California; David M. Shapiro, Roderick and Solange MacArthur Justice Center, Northwestern Pritzker School of Law, Chicago, Illinois; Easha Anand, Roderick & Solange MacArthur Justice Center, San Francisco, California; for Plaintiffs-Appellants.

James D. Weakley (argued) and Brande L. Gustafson, Weakley & Arendt PC, Fresno, California; for Defendants-Appellees County of Fresno, Robert McEwen, Karlson Mansan, Jimmy Robnett, and Braithan Stoltenberg.

Steven J. Renick (argued), Mildred K. O' Linn, Scott W. Davenport, and Lynn Carpenter; Manning & Kass Ellrod Ramirez Trester LLP, Los Angeles, California; for Defendants-Appellees City of Fresno, Officer James Rossetti, Officer Sean Calvert, and Officer Chris Martinez.

Justin R. Sarno (argued), DLA Piper US LLP, Los Angeles, California; Madeline A. Cordray, DLA Piper US LLP, Phoenix., Arizona; Richard J. Ryan, R.J. Ryan Law APC, Glendale, California; Aaron J. Weissman, Tyson & Mendes LLP, Los Angeles, California; for Defendants-Appellees American Ambulance and Morgan Anderson.

# OPINION

FORREST, Circuit Judge:

In 2017, at the direction of a paramedic, law-enforcement officers used their body weight to hold down and restrain Joseph Perez while he was prone in order to strap him to a backboard so he could be transported to a hospital for mental-health treatment. Perez asphyxiated and died. Plaintiffs—Perez's surviving family members—appeal the district court's grant of summary judgment on various 42 U.S.C. § 1983 claims in favor of the City of Fresno (the City), which oversees the Fresno Police Department (FPD); the County of Fresno (the County), which oversees the Fresno County Sheriff's Office (FCSO); a number of FPD and FCSO law-enforcement officers (collectively, the officers); and an American Ambulance paramedic. Plaintiffs contend that the officers and paramedic are not entitled to qualified immunity and that the City and the County are liable for failing to properly train their law-enforcement officers.

We affirm the district court. At the time of Perez's death, the law did not clearly establish, nor was it otherwise obvious, that the officers' actions, directed by medical personnel, would violate Perez's constitutional rights. Likewise, the paramedic involved was acting in a medical capacity during the incident, and the law did not clearly establish that medical personnel are liable for constitutional torts for actions taken to provide medical care or medical transport. Thus, the officers and the paramedic are entitled to qualified immunity. We also conclude that Plaintiffs produced insufficient evidence to support their municipal-

liability claim against the City and the County based on a failure-to-train theory.

## I.   BACKGROUND

In May 2017, FCSO received a call for assistance regarding a man—later identified as Perez—who was acting erratically, sprinting through the street, screaming, and hiding in bushes. Before FCSO could respond to the call, three FPD officers encountered Perez without being dispatched. The FPD officers observed Perez standing in the roadway, waving his arms, and yelling what sounded like "help" in their direction. When the officers approached Perez, he was talking to himself, stating that people were chasing and hitting him. Based on Perez's behavior, the officers believed that he was under the influence of a controlled substance. According to the officers, to prevent Perez from darting into traffic on the four-lane roadway or charging at the officers near the roadway, they seated Perez on the curb and placed him in handcuffs. When the dispatched FCSO deputies arrived, they found Perez seated, handcuffed, and surrounded by the FPD officers.

Five minutes after encountering Perez, one of the FPD officers called emergency medical services (EMS) to facilitate an involuntary psychiatric detention under California Welf. & Inst. Code § 5150. Initially, the officer requested a "code two" because he believed that Perez was a danger to himself and others. A minute and a half later, the officer elevated the request to a "code three." The ambulance took approximately 14 minutes to arrive on scene because it was originally sent to the wrong location.

While awaiting the ambulance, Perez stood up from the curb and refused to comply with the officers' instructions to sit back down. In response, several of the officers took Perez

to the ground to prevent him from running into traffic. While on the ground, one officer struck Perez's left side three times with his knee and then applied a wrist lock. At the same time, another officer reported that Perez was being combative. Two additional FCSO deputies responded to the scene and waited in their patrol vehicle on standby. While the officers on the ground attempted to restrain Perez, his face repeatedly hit the ground, causing him to bleed. One officer placed a towel underneath Perez's chin and face and lifted Perez's head off the ground while holding one end of the towel in each hand. Another officer asked Perez if he could breathe, and Perez responded that he could. According to the officers, at this point, Perez was lying on his stomach, but he continued to kick his legs. The officers applied a RIPP restraint to Perez's ankles and looped it around his handcuffs to control his leg movement. The officers unlooped the restraint from Perez's handcuffs when EMS arrived— approximately thirty seconds to a minute after they applied this restraint.

When EMS arrived, the paramedics retrieved a backboard. Paramedic Morgan Anderson stated that they were going to attach Perez to the board while he was prone so that he could be medically transported. The officers removed the towel holding Perez's head and assisted the paramedics in applying the backboard. As this was happening, Perez yelled that he could not breathe. Anderson nevertheless told one of the officers to sit on the backboard. The officer complied and sat on the board for one minute and thirteen seconds while other officers applied pressure and worked with Anderson to secure the backboard. After the seated officer stood up, the paramedics continued securing Perez to the backboard for another two minutes before turning him over. Once Perez was placed on his back, the

paramedics discovered that he did not have a pulse.[1] The paramedics then transported Perez to the hospital, where he was pronounced dead. The coroner attributed Perez's death to compression asphyxia during restraint with methamphetamine toxicity as another significant contributor.[2] The coroner classified Perez's death as a homicide.

Perez's family members sued the officers and Anderson under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments and the City and County for municipal liability under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978), based on a failure-to-train theory. Plaintiffs also asserted various state law claims. Defendants moved for summary judgment asserting qualified immunity, which the district court granted. While the district court determined that a reasonable jury could find that the officers violated the Fourth and Fourteenth Amendment by applying pressure to

---

[1] Plaintiffs argue that the paramedics failed to check Perez's pulse and perform CPR once they turned him over. They point to the testimony of two officers who stated that they did not see the paramedics perform these tasks. Other officers, however, stated the opposite, and the paramedics testified that they performed lifesaving measures. The bodycam footage appears to show the paramedics checking Perez's pulse on his neck after he was turned over. Regardless of any dispute in the record regarding the paramedics' actions after Perez was turned over, it is immaterial to the claims on appeal that concern the use of force against Perez before he was turned over. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

[2] According to the coroner, the average lethal dose of methamphetamine is 200 nanograms per milliliter. Perez had ten times that amount in his bloodstream.

the backboard while Perez was prone,[3] it nonetheless concluded that the officers were entitled to qualified immunity because at the time of the incident the law did not clearly establish, nor was it obvious, that the officers' actions were unconstitutional. The district court likewise granted Anderson qualified immunity because existing law did not clearly establish, nor was it obvious, that Anderson's conduct in providing medical care was unconstitutional. Finally, the district court determined that Plaintiffs presented insufficient evidence that either the City or the County were deliberately indifferent to their duty to train their officers on restraint asphyxia. Having dismissed all of Plaintiffs' federal claims, the district court declined to exercise supplemental jurisdiction over their remaining state-law claims. Plaintiffs timely appealed.

## II. DISCUSSION

Plaintiffs present three issues on appeal: (1) whether the law-enforcement officers are entitled to qualified immunity; (2) whether the paramedic is entitled to qualified immunity; and (3) whether Plaintiffs presented sufficient evidence to support their *Monell* claim against the City and the County based on a failure-to-train theory. We review a district court's grant of summary judgment and decision on qualified immunity de novo. *C.V. v. City of Anaheim*, 823 F.3d 1252,

---

[3] The district court concluded that the officers' other uses of force, including taking Perez to the ground, administering knee strikes, applying a wrist lock, using the towel, and utilizing the RIPP restraint, were not excessive. Plaintiffs do not challenge the district court's findings on appeal. While Plaintiffs' opening brief mentions the towel and uses the term "hog-tie," to refer to the RIPP restraint that was eventually removed when EMS arrived, Plaintiffs present no meaningful argument that the district court erred in finding that neither use of force was independently excessive.

1255 (9th Cir. 2016). "[V]iew[ing] the evidence in the light most favorable to the nonmoving party," we must "determine whether there are any genuine issues of material fact, and decide whether the district court correctly applied the relevant substantive law." *Johnson v. Barr*, 79 F.4th 996, 1003 (9th Cir. 2023) (quoting *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016)). We address each issue in turn.

## A. Law-Enforcement Officers

We begin by considering Plaintiffs' arguments that the district court erred in granting the law-enforcement officers qualified immunity. The doctrine of qualified immunity shields police officers from § 1983 liability unless (1) the officers "violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time'" of the violation. *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle*, 566 U.S. at 664). Although there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). It is insufficient for a legal principle to merely be "suggested by then-existing precedent." *Wesby*, 583 U.S. at 63. "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* Courts must be careful not to "define clearly established law at a high level of generality." *Id.* (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). Specificity of the rule is

critical, particularly "in the Fourth Amendment context, where . . . '[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Luna*, 577 U.S. at 12 (alteration in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)). Qualified immunity is a "demanding standard" because it "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 583 U.S. at 63 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The officers do not dispute the district court's conclusion that a reasonable jury could find that they violated the Fourth and Fourteenth Amendments by applying pressure to the backboard while Perez was in a prone position and thereafter ignoring his statement that he could not breathe. Therefore, qualified immunity hinges on whether the unlawfulness of these actions, taken at the direction of medical personnel, was clearly established when Perez died.[4]

---

[4] The district court determined that the pressure that the officers applied before the paramedics arrived was "a low quantum of force" and that "the tipping point in the encounter [between the officers and Perez] occurred when the backboard was placed on Perez's back." As a result, the district court "focuse[d] mostly on [the] placement of the backboard" in its summary judgment order. On appeal, Plaintiffs do not challenge the district court's non-lethal force analysis of the actions taken before the backboard was introduced. Instead, Plaintiffs' arguments are focused only on the pressure applied to Perez related to securing the backboard *after* the paramedics arrived, which they repeatedly contend caused Perez's death. As just one example of many, in their Opening Brief on appeal they contend: "[I]t is simply obvious that it violates the Constitution for officers and deputies to compress Perez under a board, disregard his statement that he could not breathe, and apply downward pressure to the board until he asphyxiated and died." As a result, the

Plaintiffs contend that the officers are not entitled to qualified immunity for three reasons: (1) the officers' actions were obviously unconstitutional; (2) our decision in *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), clearly established that the officers' actions violated the Constitution; and (3) the officers departed from their training. We first consider Plaintiffs' assertion that *Drummond* clearly established the unconstitutionality of the officers' actions before addressing Plaintiffs' obviousness and departure-from-training arguments.

i.

In *Drummond*, Drummond's neighbor called the police because he was afraid that Drummond, who had a history of mental illness, was going to injure himself by running through traffic. *Id.* at 1054. Three officers responded and found Drummond in a convenience store parking lot, unarmed, "hallucinating[,] and in an agitated state." *Id.* The officers called for an ambulance to transport Drummond to the hospital for an involuntary psychiatric hold. *Id.* While the ambulance was in route, the officers took Drummond to the ground, handcuffed him in a prone position, and despite his lack of resistance, two officers placed the weight of their bodies on his back and neck. *Id.* Drummond "repeatedly told the officers that he could not breathe," yet the officers continued to apply their weight to his back and neck. *Id.* at 1054–55. Several minutes later, the officers bound

---

dissent's contention that we are improperly resolving factual disputes in favor of the officers or improperly assuming that the paramedic's instruction that the officers sit on the backboard was the cause of Perez's death is incorrect. We are analyzing Plaintiffs' case as they presented it. *See Greenlaw v. United States*, 554 U.S. 237, 243–44 (2008).

Drummond's ankles, and shortly thereafter, he went limp and stopped breathing. *Id.* at 1055. Although Drummond was eventually revived, he sustained significant brain damage and fell into a permanent coma. *Id.* Through his guardian ad litem, Drummond sued the officers under § 1983. *Id.* The district court granted the officers qualified immunity. *Id.* Specifically, the district court concluded that the officers did not violate the Constitution and even if they did, there was no clearly established law putting them on notice that their conduct was unconstitutional. *Id.*

We reversed. *Id.* at 1054. We first determined that the officers' use of force was excessive. *Id.* at 1059–60. Then, we held that the law, as it existed, clearly established that the force used by the officers under the circumstances was unlawful. *Id.* at 1060. We explained that the officers asphyxiated Drummond by applying their weight to his back and neck despite him being restrained, nonresistant, and repeatedly pleading for air. *Id.* at 1061. Although there was no Ninth Circuit precedent involving the same facts, we determined that "*[a]ny* reasonable officer should have known that such conduct constituted . . . excessive force." *Id.* We bolstered our conclusion by pointing to recent local newspaper stories and federal cases describing the dangers of compression asphyxia and the officers' own training materials. *Id.* at 1061–62.

While many of the facts in *Drummond* are disturbingly similar to this case, we nonetheless conclude that *Drummond* did not clearly establish the unconstitutionality of the officers' conduct here because this case presents material factual differences. *Cf. Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5–8 (2021) (per curiam) (reversing our denial of qualified immunity to an officer because we relied on a materially distinguishable case despite that case also

involving a nonresistant, prone suspect, who was pinned to the ground by an officer's knee). The injurious restraint of Drummond occurred before paramedics arrived, meaning the officers were not acting under the direction of medical personnel. *Id.* at 1054–55. But here, as just discussed, the only use of force that Plaintiffs challenge is the restraint that occurred after the paramedics responded to the scene, determined that Perez needed to be placed on a backboard to facilitate his transport to the hospital, and Anderson instructed the officers to assist in securing Perez to the backboard by sitting on top of him while he was in a prone position.

At first glance, this distinction may seem hollow given the general principle that subordinate officers cannot simply defer to unlawful orders by their superiors. *See, e.g.*, *Baude v. Leyshock*, 23 F.4th 1065, 1074 (8th Cir. 2022); *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010). But that is not what happened. The officers did not follow the paramedic's direction because he was their superior. The officers followed the paramedic's direction because he was called to the scene to provide medical care and transport. Indeed, all the officers involved testified that they defer to medical personnel that respond to the scene of an emergency on medically-related matters. Nothing in *Drummond* clearly establishes that the officers were required to second guess the paramedics in their effort to provide medical care.

Given the specific context of this case, we cannot conclude that *Drummond* put the officers on fair notice that their actions—pressing on a backboard on top of a prone individual being restrained for medical transport, *at the direction of a paramedic working to provide medical care*— was unlawful. *See Luna*, 577 U.S. at 12 (clearly-established prong examines "whether the violative nature of *particular*

conduct is clearly established" (quoting *al-Kidd*, 563 U.S. at 742)); *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (prior cases must "articulate[] a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct* was unlawful").

ii.

Alternatively, Plaintiffs argue that, regardless of whether a specific constitutional violation was clearly established, the officers are not entitled to qualified immunity because their conduct was obviously unconstitutional. They contend that it was obvious that the officers could not lawfully "compress Perez under a board, disregard his statement that he could not breathe, and apply downward pressure to the board until he asphyxiated and died."

In the absence of analogous case law, a plaintiff can nevertheless surmount the clearly-established-law requirement by demonstrating instead that the constitutional violation was obvious. *See O'Doan v. Sanford*, 991 F.3d 1027, 1044 (9th Cir. 2021). An "obvious case" is one where the officers' conduct was clearly unlawful. *Wesby*, 583 U.S. at 64. As we have recognized, such cases are extraordinarily "rare" and "especially problematic in the Fourth-Amendment context." *O'Doan*, 991 F.3d at 1044 (citations omitted).

The same facts that distinguish this case from *Drummond* also demonstrate that the officers' conduct was not obviously unconstitutional. A paramedic concluded that Perez needed to be restrained so that he could be transported to a hospital and directed the officers involved to help attach Perez to a backboard while he was laying prone, including by sitting on the backboard. Under the circumstances, it was not obvious that applying the backboard in this manner—as

directed by a medical professional trained to respond in emergency situations—would violate the Constitution. *See id.* Thus, we disagree that the obviousness "exception to the specific-case requirement" applies here. *Sharp*, 871 F.3d at 912.

iii.

Finally, Plaintiffs contend that the officers are not entitled to qualified immunity because they departed from their training. Plaintiffs rely on the Supreme Court's recent decision in *Lombardo v. City of St. Louis*, 594 U.S. 464 (2021) (per curiam).[5] In *Lombardo*, police officers arrested Nicholas Gilbert and put him in a holding cell. *Id.* at 465. An officer observed Gilbert attempting to hang himself. *Id.* In response, several officers entered the cell, and a struggle ensued. *Id.* The officers restrained Gilbert in a prone position and placed pressure on his limbs, back, and torso. *Id.* at 465–66. Gilbert pleaded for the officers to stop. *Id.* at 466. After struggling in that position for fifteen minutes, Gilbert stopped breathing and died. *Id.*

Gilbert's parents sued, and the district court granted summary judgment to the officers "because they did not violate a constitutional right that was clearly established at the time of the incident." *Id.* "The Eighth Circuit affirmed on different grounds, holding that the officers did not apply unconstitutionally excessive force." *Id.* The Supreme Court concluded that the Eighth Circuit was "unclear [as to]

---

[5] Plaintiffs also cite Cal. Gov't Code § 7286.5, which prohibits law-enforcement agencies from "authoriz[ing] techniques or transport methods that involve a substantial risk of positional asphyxia." This section, however, was not enacted until September 2021—four years after the events of this lawsuit. *See* Assemb. B. 490, 2021–2022 Leg., Reg. Sess. (Cal. 2021).

whether [it] thought the use of a prone restraint . . . is *per se* constitutional so long as an individual appears to resist officers' efforts to subdue him." *Id.* at 467. Because the Eighth Circuit failed to consider evidence such as officer training and police guidance regarding prone restraint, and instead may have applied a *per se* rule, the Supreme Court vacated and remanded for further inquiry into the facts and circumstances of the case. *Id.* at 467–68.

Plaintiffs argue that, as in *Lombardo*, the evidence here demonstrates that "there is well-known police guidance" that advises officers to remove individuals from their stomachs once they are handcuffed and because the officers did not follow this guidance, qualified immunity was inappropriate. Contrary to Plaintiffs' argument, *Lombardo* does not establish that any violation of police policy or guidance is, in and of itself, sufficient to deny qualified immunity. Indeed, the *Lombardo* Court "express[ed] no view as to whether the officers used unconstitutionally excessive force or, if they did, whether Gilbert's right to be free of such force in these circumstances was clearly established at the time." *Id.* at 468. The Court took issue only with the Eighth Circuit's failure to consider evidence of police training and guidance on prone restraint when assessing the reasonableness of the officers' actions. *Id.* at 467–68. As we have explained, official training and guidance can influence the qualified-immunity analysis, but they are not determinative. *Vazquez v. County of Kern*, 949 F.3d 1153, 1164–65 (9th Cir. 2020). "Even if an officer acts contrary to [his] training . . . , that does not itself negate qualified immunity where it would otherwise be warranted." *City & County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015).

While Plaintiffs present evidence that both FPD and FCSO train their officers not to leave an individual laying on his stomach once secured, Plaintiffs do not point to any policy prohibiting such restraint to facilitate medical treatment. In fact, four of the seven officers involved in the incident testified that they are trained to defer to paramedics on issues of treatment and transport when they assist in an emergency.[6] Thus, Plaintiffs have not presented evidence that the officers departed from their training under these specific circumstances. More important, however, for the reasons previously explained, the officers are entitled to qualified immunity because the law did not clearly establish, nor did the context of this case make it obvious, that applying pressure to the backboard at Anderson's direction was unlawful. Even if the officers contravened their training, that does not defeat qualified immunity in this case. *See id.*

## B.  The Paramedic

We next address whether Anderson is entitled to qualified immunity for his role in Perez's death. Because we conclude that the law did not clearly establish at the time of the events at issue that a paramedic restraining a person in order to secure the person for medical transport could be held liable for a constitutional violation under either the Fourth or Fourteenth Amendment, we conclude that Anderson is entitled to qualified immunity. *See Wesby*, 583 U.S. at 63–64 (clearly established question must be specific to the context of the case). We do not address the separate question

---

[6] The other three officers also testified that they defer to paramedics' judgment but that they do so based on personal experience or because the situation is medical.

of whether Anderson's actions constituted a constitutional violation.

As the district court noted, there are few cases applying Fourth and Fourteenth Amendment standards to paramedics responding to medical emergencies. And we have not found, nor have Plaintiffs cited, any Supreme Court or Ninth Circuit precedent establishing constitutional liability under similar circumstances. However, some of our sister circuits have addressed this context. For example, the Sixth Circuit has held that whether a paramedic is "entitled to qualified immunity depends on whether [he] acted in a law-enforcement capacity or in an emergency-medical-response capacity when engaging in the [complained-of] conduct." *McKenna v. Edgell*, 617 F.3d 432, 439–40 (6th Cir. 2010); *Peete v. Metro. Gov't of Nashville & Davidson County*, 486 F.3d 217, 221 (6th Cir. 2007). That court reasoned that if the paramedic was acting in a law-enforcement capacity when he engaged in the challenged conduct, then the plaintiff's claim is properly raised under § 1983, but if the paramedic was acting in a medical capacity, then the plaintiff's claim properly sounds in medical malpractice. *See McKenna*, 617 F.3d at 440.

In *Peete*, the Sixth Circuit reversed the denial of qualified immunity for paramedics who restrained and applied pressure to an unconscious patient in a prone position, thereby causing the patient's death. 486 F.3d at 220. That court determined that "there is no federal case authority creating a constitutional liability for the negligence, deliberate indifference, and incompetence" of paramedics where their "purpose is to render solicited aid in an emergency rather than to enforce the law, punish, deter, or incarcerate." *Id.* at 221. The Sixth Circuit likewise explained in *McKenna* that if there is any constitutional

"right to be free from . . . unintentional conduct by medical-emergency responders . . . , it is not clearly established." 617 F.3d at 440.

Similarly, the Seventh Circuit granted qualified immunity to a paramedic who sedated an injured arrestee before taking the arrestee to the hospital because it was not clearly established that such conduct violates the Fourth Amendment. *Thompson v. Cope*, 900 F.3d 414, 422–24 (7th Cir. 2018). In *Thompson*, a paramedic was dispatched to the scene of an animal bite, but when he arrived, he discovered that the bite came from a human—Dusty Heishman. *Id.* at 418. An officer asked the paramedic to examine Heishman before treating the bite patient. *Id.* The paramedic suspected that Heishman was under the influence of drugs and injected him with a sedative before placing him in an ambulance. *Id.* Once in the ambulance, the paramedic determined that Heishman was not breathing and had no pulse, and despite the paramedic restoring Heishman's heartbeat, he died eight days later. *Id.* The district court granted the paramedic qualified immunity against Heishman's estate's deliberate-indifference claim but denied qualified immunity on the excessive-force claim. *Id.* at 419. The Seventh Circuit reversed because the "[c]ase law did not (and does not) clearly establish that a paramedic can violate a patient-arrestee's Fourth Amendment rights by exercising medical judgment to administer a sedative in a medical emergency." *Id.* at 417. The fact that the paramedic was "confronting a patient suffering from a life-threatening emergency" took the "case out of the realm of clearly established Fourth Amendment law." *Id.* at 424. But the court noted that the question would be more difficult if the paramedic sedated someone at the direction of law enforcement when there was no medical purpose for sedation. *Id.* at 424 n.2.

More recently, the Eighth Circuit confronted similar claims in *Buckley v. Hennepin County*, 9 F.4th 757 (8th Cir. 2021). There, paramedics responded to an emergency call from police concerning a woman who had been drinking and was threatening self-harm. *Id.* at 759. The paramedics determined that the woman needed to be transported to the hospital, but she refused. *Id.* Despite her objections, the officers and paramedics restrained her and carried her to the ambulance, where the paramedics administered a sedative. *Id.* The woman immediately developed respiratory distress and was intubated. *Id.* at 759–60. The district court dismissed the woman's claims against the paramedics, and the Eighth Circuit affirmed. *Id.* at 760, 765. The court determined that when the paramedics injected the woman, they were acting in a medical capacity. *Id.* at 761. The court then concluded that the paramedics' actions were not unreasonable given the woman's "intoxicated, suicidal, [and] semi-conscious" state. *Id.* at 762. Further, the court explained that the paramedics' attempt to transport the woman in need of medical care to a hospital demonstrated concern, not indifference, for her well-being. *Id.* at 764. The fact that the paramedics sedated the woman to protect her, as well as themselves, from harm did not change the court's analysis. *Id.*

Here, Plaintiffs agree that "paramedics who act with a medical purpose backed up by plausible medical judgment" are entitled to qualified immunity, even if they make a mistake. But they argue that Anderson "went beyond providing 'medical care'" by assisting and directing law enforcement in restraining Perez. Indeed, Plaintiffs contend

that Anderson's actions do not constitute medical care at all because he caused Perez's death.[7] We disagree.

Plaintiffs did not present evidence from which a reasonable jury could find that Anderson was acting in a law-enforcement capacity during his interaction with Perez. *See McKenna*, 617 F.3d at 441–43 (state actor's role is generally a question for the jury but courts may answer the question "as a matter of law when a reasonable jury could come to but one conclusion"); *cf. Johnson*, 79 F.4th at 1003 (existence of probable cause is generally a jury question but courts may decide the issue "if 'no reasonable jury could find an absence of probable cause under the facts'" (quoting *Gasho v. United States*, 39 F.3d 1420, 1428 (9th Cir. 1994))). The paramedics arrived on the scene in response to a medical-emergency call reporting an individual who was a danger to himself and others. Their actions throughout the incident were taken for the purpose of transporting Perez to the hospital for medical treatment. Anderson determined that before Perez could be transported in the ambulance, he needed to be secured to a backboard. And Anderson directed the officers to assist in restraining Perez while he was lying on the ground so that he

---

[7] Plaintiffs also argue that because Anderson conceded at summary judgment that he was acting under color of law, the district court should have treated him like a law-enforcement officer and denied qualified immunity. Plaintiffs are mistaken. Whether an individual acts under color of state law is a different inquiry than whether an individual is entitled to qualified immunity. The color-of-law question simply asks whether a defendant "exercised power possessed by virtue of state law"—a prerequisite "[t]o state a claim under § 1983." *West v. Atkins*, 487 U.S. 42, 48–49 (1988) (internal quotation marks omitted) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). The qualified-immunity question, on the other hand, asks whether an individual who acted under color of state law to deprive another of his federal rights is nevertheless immune from suit. *See O'Doan*, 991 F.3d at 1035–36.

could be attached to the backboard. In the over 15-minute video of the incident, there is no indication from Anderson, *or any of the officers*, that Perez was ever restrained so that he could be arrested or punished. Rather, the comments of all involved during the incident were focused on Perez's agitated state and trying calm him down so that he could be transported for treatment. After the backboard was secured, Anderson and the other paramedics turned Perez over in preparation for placing him on the gurney and determined that he did not have a pulse. While the impact of these actions is heart-rending, and Anderson's conduct may have fallen well short of any reasonable standard of care, the record establishes that he was trying to render medical aid to Perez.[8] *Cf. Peete*, 486 F.3d at 222 (concluding that paramedics who asphyxiated their unconscious patient "were attempting to help him, although they badly botched the job").

Because we conclude that Anderson was acting in a medical capacity during the tragic event at issue in this case, we also conclude that he is entitled to qualified immunity. There is no precedent imposing constitutional tort liability on a paramedic who attempts to render emergency medical aid to a patient by restraining him in preparation for a medical transport. The district court therefore did not err in granting summary judgment in favor of Anderson.

---

[8] Plaintiffs contend that "Anderson's initial denial, under oath, that he gave the instruction" to sit on the backboard undermines any conclusion that he was attempting to provide medical aid to Perez. We are unpersuaded by this argument. Our focus in determining Anderson's role is on the events that occurred on May 10, 2017. *See McKenna*, 617 F.3d at 441. That Anderson initially claimed that he did not recall giving the instruction and could not recognize his own voice in the video does not undercut the evidence from the day of the event.

## C. *Monell* **Claims**

Finally, we consider Plaintiffs' *Monell* claims against the City and the County based on a failure-to-train theory. Municipalities and local governments can be sued under § 1983 for constitutional deprivations caused by governmental policy or custom. *Monell*, 436 U.S. at 690. Respondeat superior liability, however, does not exist under § 1983. *Id.* at 691. "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

To prevail on a failure-to-train theory, a plaintiff must demonstrate that a municipality's failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (second alteration in original) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Deliberate indifference is a high legal standard, "requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997)). Municipal liability "is at its most tenuous where a claim turns on a failure to train." *Id.* Ordinarily, "[a] pattern of similar constitutional violations," rather than proof of a single incident, is "necessary to demonstrate deliberate indifference." *Id.* at 62–63 (internal quotation marks omitted) (quoting *Brown*, 520 U.S. at 409). Nonetheless, single-incident liability may exist in the rare case where "the unconstitutional consequences of failing to train" are "patently obvious." *Id.* at 63–64. Merely negligent training is insufficient to support a *Monell* claim. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Plaintiffs contend that the following evidence creates a triable issue on their failure-to-train claim: the facts of the incident, testimony regarding the officers' unfamiliarity with the dangers of restraint asphyxia, and Plaintiffs' expert report describing the inadequacies in FPD's and FCSO's training on the risks of prone restraint. But what is missing is any evidence pointing to a pattern of excessive-force incidents by untrained officers that resulted in the outcome here—restraint asphyxia.[9] Accordingly, to establish a question of fact regarding municipal liability, Plaintiffs needed to show that the unconstitutional consequences of failing to train officers on restraint asphyxia were "patently obvious." *Thompson*, 563 U.S. at 64. They did not.

As an initial matter, Plaintiffs acknowledge that FPD and FCSO maintain policies to prevent restraint and positional asphyxia. While two FPD officers testified that they were not trained on prone-restraint asphyxia, a third FPD officer testified that he was trained and was taught to monitor a prone individual's breathing. Likewise, a FCSO deputy stated that it is unlikely that an individual would asphyxiate from downward pressure while in a prone restraint but nevertheless explained that he was trained to monitor for signs of restraint asphyxia. The possible inadequate training of two FPD officers about the risks of restraint asphyxia is insufficient to support a *Monell* claim. *See Harris*, 489 U.S. at 390–91 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten [municipal]

---

[9] Because Plaintiffs do not challenge the district court's finding that no constitutional violation resulted from the officers' other uses of force, *see supra* note 3, *Monell* liability cannot flow from those acts. *See Lockett v. County of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims . . . require a plaintiff to show an underlying constitutional violation.").

liability . . . , for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered." (citations omitted)).

Additionally, to the extent Plaintiffs rely on the officers' noncompliance with their training, their theory of liability against the City and the County impermissibly rests on the mere existence of an employer-employee relationship, rather than a governmental policy or custom. *See Monell*, 436 U.S. at 691–92 (explaining that a municipality is not liable merely because an employee commits a constitutional violation). Even "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city [or county] liable." *Harris*, 489 U.S. at 391. Because Plaintiffs presented insufficient evidence to establish deliberate indifference, we affirm the district court's dismissal of Plaintiffs' *Monell* claims.

\* \* \* \* \*

Joseph Perez's death was a tragedy. But that alone does not dictate the outcome of this case. Because the law-enforcement officers' actions that Plaintiffs contend led to Perez asphyxiating were taken at the direction of a medical professional who was trying to provide medical care, both the officers and the paramedic are entitled to qualified immunity. The district court also properly granted summary judgment against Plaintiffs' *Monell* claims because Plaintiffs presented insufficient evidence that the City and the County were deliberately indifferent to their duty to properly train their law-enforcement officers.

**AFFIRMED.**

S.R. THOMAS, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's analysis of the paramedic liability and failure-to-train claims, and join in affirming the district court's grant of summary judgment for Anderson, AA, FSCO, and FPD.  However, I respectfully disagree with the conclusion that the law governing the conduct of the individual officer defendants ("Officers") was not "clearly established" in 2017.  Extensive federal case law, departmental guidance, and common sense gave Officers fair warning that applying continuous force to the back of a prone person who claims he cannot breathe is constitutionally excessive.  Any argument that Officers' continued force was nonetheless "reasonable" under the circumstances turns on disputed issues of material fact—not confusion about "what the law requires." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).  Therefore, I respectfully dissent in part.

I

Fourteen years before Joseph Perez was killed, we held that police officers violated the clearly established rights of Brian Drummond when they "crushed [him] against the ground" while he was laying on his stomach, handcuffed and awaiting an ambulance. *Drummond v. City of Anaheim*, 343 F.3d 1052, 1061 (9th Cir. 2003).  Like Perez, Drummond "told the officers he could not breathe," but they continued to press on his back anyway. *Id*. at 1054.

Applying the factors for excessive force from *Graham v. Connor*, 490 U.S. 386, 396 (1989), we concluded that "only minimal force" was permitted "once Drummond was handcuffed and lying on the ground." *Drummond*, 343 F.3d at 1058.  "Balancing the severe force against the minimal

need," *id*., we rejected the officers' qualified immunity defense:

> The officers—indeed, any reasonable person—should have known that squeezing the breath from a compliant, prone, and handcuffed individual despite his pleas for air involves a degree of force that is greater than reasonable.

*Id*. at 1059. While there was "no federal case directly on point" at the time, we held that existing decisional law, local newspaper publicity about compression asphyxia, and departmental training all contributed to putting the officers "on notice" that the force they used "amounted to a constitutional violation." *Id*. at 1062; *see also Vasquez v. Cnty. of Kern*, 949 F.3d 1153, 1164–65 (9th Cir. 2020) (analyzing officer training and departmental guidance as indicia of obviousness).

Between 2003 and 2017, six of our sister circuits reached a similar conclusion concerning use of prone compression on a subject who has been restrained. *McCue v. City of Bangor, Maine*, 838 F.3d 55, 64–65 (1st Cir. 2016); *Rogoz v. City of Hartford*, 796 F.3d 236, 247–48 (2d Cir. 2015); *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008); *Abdullahi v. City of Madison*, 423 F.3d 763, 775 (7th Cir. 2005); *Champion v. Outlook Nashville, Inc*., 380 F.3d 893, 903 (6th Cir. 2004); *Bornstad v. Honey Brook Twp*., 211 F. App'x 118, 124 (3d Cir. 2007) (mem.). During this same period, we repeatedly held that *Drummond* supplied clearly established law for cases involving prone restraint by law enforcement, notwithstanding slight factual variations, *see Zelaya v. Las Vegas Metro. Police Dep't*, 682 F. App'x 565,

567 (9th Cir. 2017) (mem.); *Abston v. City of Merced*, 506 F. App'x 650, 652 (9th Cir. 2013) (mem.); *Tucker v. Las Vegas Metro. Police Dep't*, 470 F. App'x 627, 629 (9th Cir. 2012) (mem.); *Arce v. Blackwell*, 294 F. App'x 259, 261 (9th Cir. 2008) (mem.), as did lower courts in the Ninth Circuit. *See, e.g.*, *Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1155 (E.D. Cal. 2016); *Brown v. City & Cnty. of San Francisco*, No. 11-02162, 2014 WL 1364931 at *14 (N.D. Cal. Apr. 7, 2014); *Madrid v. City of* Fresno, No. 108 CV 00098, 2011 WL 13243581 at *13 (E.D. Cal. Feb. 23, 2011).

*Drummond* and its progeny provide law enforcement with notice of a common-sense rule: it is unconstitutional to place prolonged body weight force on the back of prone and unarmed individual who cannot meaningfully resist. *See Drummond*, 343 F.3d at 1059; *Abston*, 506 Fed. App'x at 653. The law is especially clear where, as here, the prone individual verbally communicates that he cannot breathe. *Drummond*, 343 F.3d at 1061; *Arce*, 294 F. App'x at 261.

## II

The majority acknowledges the "disturbing[]" similarities between this case and *Drummond*. In both cases, the police encounter began on the side of a road after officers were summoned to care for an individual acting erratically and in need of psychiatric care. Like Drummond, Perez was unarmed and initially posed no threat to officer safety, but was handcuffed for his own protection from nearby traffic. 343 F.3d at 1054. Once handcuffed, both men were subsequently tackled to the ground and held on their stomachs before the ambulance arrived. *Id*. Like the defendants in *Drummond*, law enforcement in Fresno received specific guidance warning of the risks of prone

restraints and positional asphyxia, which Officers seem to have forgotten or ignored.  343 F.3d at 1059.

Nevertheless, the majority purports to distinguish this case based on the arrival of a paramedic on the scene, approximately ten minutes into the prone restraint.  This is a hollow distinction that turns improperly on unresolved questions of fact.  To hold otherwise disregards "the Supreme Court's admonition that 'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'"  *Torres v. City of Madera*, 648 F.3d 1119, 1129 (9th Cir. 2001) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The majority's comparison to *Drummond* reflects Officers' version of events, in which the asphyxiation occurred as a result of reasonable but misguided deference to the direction of medical personnel.  This view impermissibly resolves several factual questions in favor of Officers, rather than Perez.  *Saucier*, 553 U.S. at 201.  First, the majority assumes that it was the paramedic's instruction that caused Officers to employ unconstitutional force.  This issue is contestable, especially since the instruction occurred some fifteen minutes *after* Officers began pressing on Perez's back, under conditions nearly identical to those in *Drummond*.  The degree to which that initial pressure contributed to Perez's death is disputed.[1]  As is the degree to

---

[1] While the district court's analysis focused "mostly" on the quantum of pressure applied after the placement of the backboard, the court also recognized that the "struggles and pressure leading up to the placement of the backboard" may have played a contributing role.  In crediting the coroner's finding that the cause of death was "compression asphyxia during restraint," the court never indicated that only the period after the

which the paramedic began directing the scene and Officers "did defer" after the ambulance arrived.

Second, the majority accepts that Officers' decision to keep pressing was "reasonable" because a paramedic was present. Whether this decision was indeed reasonable turns on factual questions, such as Officers' perception of Perez's struggle to breathe and the substance of Officers' training. "Because the reasonableness standard 'nearly always requires a jury to sift through disputed factual contentions . . . summary judgment . . . in excessive force cases should be granted sparingly.'" *Torres*, 648 F.3d at 1125 (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir.2002)). "This principle applies with particular force where," as here, "the only witness other than [the defendants] was killed during the encounter." *Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) (en banc).

Even if the paramedic did direct the application of lethal force, police officers are not immunized from obviously unconstitutional conduct merely because they were following instructions. *See California Att'ys for Crim. Just. v. Butts*, 195 F.3d 1039, 1050 (9th Cir. 1999) ("a reasonable police officer should have known that this conduct was improper . . . whether or not the conduct was endorsed by training materials"); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir.1994) ("Where a statute authorizes official conduct which is patently violative of fundamental

---

placement of the backboard was relevant. To the contrary, the district court quoted the coroner's description of a "*ten minute* restraining process"—a duration that clearly extends beyond the time the backboard was in place. The majority's assertion that "the only use of force that Plaintiffs challenge is the restraint that occurred after the paramedics responded" is unfounded.

constitutional principles, an officer who enforces that statute is not entitled to qualified immunity"); *Kennedy v. City Of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010) ("[S]ince World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order.") (quoting *O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004)).

We have never held that compliance with an unconstitutional order should be treated differently just because the order comes from someone other than a direct supervisor. To the contrary, we have held that constitutional liability extends to all "integral participants" in the constitutional violation, including those who merely fail to intercede in unconstitutional conduct before them. *See Green v. City & Cnty of San Francisco*, 751 F.3d 1039, 1051 (9th Cir. 2014); *Tobias v. Arteaga*, 996 F.3d 571, 583–84 (9th Cir. 2021).

### III

In sum, *Drummond* clearly establishes the law in this case. The Officers' argument that their conduct was nonetheless reasonable requires us to decide factual questions that should be resolved by a jury. As such, I respectfully dissent from the affirmation of summary judgment for the individual officer defendants.